J. W. DOXSEE, Trustee of the Estate of L. P. Waddick, Bankrupt, v. L. P. WADDICK and W. M. WELCH, Appellants.

Bankruptcy: FRAUDULENT CONVEYANCE: EVIDENCE. In an action to set aside a sale made prior to bankruptcy on the ground of fraud, evidence of other similar transactions, while proper as bearing on the intent or insolvency of the bankrupt, are inadmissible against the purchaser without a showing that he had knowledge thereof.

Fraud: EVIDENCE. Fraud in disposing of property prior to bankruptcy must be proven like any other fact to avoid the sale; it cannot be inferred merely from suspicious circumstances. Evidence considered and held insufficient to affect the purchaser with either knowledge of the fraud or insolvency of the seller.

*Appeal from Jones District Court.*—HON. H. M. REMLEY, Judge.

FRIDAY, FEBRUARY 5, 1904.

ACTION to set aside a transfer of property made by a bankrupt within four months before his bankruptcy. Decree for plaintiff. Defendants appeal.—*Reversed.*

*Welch & Welch* for appellants.

*Herrick & Bauder* and *Crissman, Trewin & Holbrook* for appellee.

McCLAIN, J.—It appears that about three weeks before defendant Waddick, who was engaged in the business of

selling agricultural implements, filed his voluntary petition
1. FRAUDULENT in bankruptcy, he sold and transferred to de-
conveyance:
evidence.     fendant Welch, who is an attorney, two farm
wagons and all his book accounts. The two transactions seem
not to have been connected, although they took place on the
same day or on successive days. No question is before us as
to the transfer of the wagons, for the trial court held the
transaction with reference thereto valid. But the sale of the
book accounts was set aside, and defendant Welch was requir-
ed to account for the proceeds, less the cash paid by him there-
for. With reference to this transfer, it is not contended that
it was for an inadequate consideration, but the claim is that
it was with the intent to hinder, delay, and defraud credi-
tors, and that this intention was participated in by Welch, or,
at least, that Welch had knowledge of the insolvency of Wad-
dick at the time the transfer was made, which would be suf-
ficient, under the bankrupt law, to require that it be set aside.
There is no direct evidence of knowledge on the part of Welch
that Waddick had any fraudulent intent, nor, indeed, that
Waddick was, at the time of the transfer, insolvent. But it
is contended that, taking all the circumstances together, there
was sufficient evidence to justify the decree of the court, and
counsel for appellee insists that we can properly take into ac-
count, not only the transactions between Waddick and Welch,
but also transactions between Waddick and other persons to
whom property was transferred about the same time, for the
purpose of finding that Welch had knowledge of a fraudulent
intent, or, at least, of Waddick's insolvency. The difficulty
with the claims of counsel is, however, that no relation be-
tween the transactions with Welch and those with other pur-
chasers of property, either directly or indirectly, is estab-
lished by the evidence. The other transactions, no doubt,
could be properly considered in determining Waddick's inten-
tion, or as bearing on the question of his insolvency. But
there is not the slightest showing that Welch had knowledge
of these other transactions, and therefore, with reference to

the validity of the transfers, so far as he is concerned, the other transactions are wholly immaterial.

As bearing on the good faith of Welch, or his knowledge of Waddick's insolvency, the evidence, so far as it is in any way material, tends to show that the two farm wagons

**2. Fraud: evidence.** were sold at about their retail price, to be paid for when convenient to Welch; that Welch, though the owner of a farm, and pretending to buy them for use on his farm, did not actually make use of them for that purpose, but traded one of them to his tenant for other property, and kept the other, unused, until the time of the trial in the lower court; and that the indebtedness for the wagons was ultimately satisfied by Welch by the payment to his brother and co-partner in the practice of the law of $25, which was used in paying the filing fee in the subsequent bankruptcy proceeding, and a credit by the firm to Waddick of the balance in payment of attorney's fees in such proceeding. As there was no evidence that Waddick contemplated bankruptcy proceedings at the time of the sale of these wagons to Welch, we cannot see how the transaction as to the wagons has any bearing whatever on the question of the validity of the transfer of the book accounts. The evidence also tends to show that the book accounts, aggregating some $500 in amount, which were transferred to Welch by written instrument of assignment, constituted and were described in the instrument as all the book accounts which Welch had at the time the transfer was made, and that, in connection with the transfer, Waddick delivered the books themselves to Welch, thus indicating, as it is claimed, that Waddick was going out of business. With reference to this transfer, it may well be said that the circumstances give rise to a suspicion that Welch, as a reasonable person, must have known that Waddick was contemplating the winding up of his business. But even if such knowledge were established, it would not affect Welch with knowledge of either fraud or insolvency. A merchant is not necessarily insolvent because he goes out of business. Nor

is a merchant, continuing in business, necessarily insolvent or contemplating fraud when he sells his book accounts in a lump. It appears that the sale was for a fair price, that is, for about the amount which could reasonably have been expected to be realized on the accounts, after deducting the usual collection fee. We cannot find in the record any evidence which would justify us in holding that knowledge of either fraud or insolvency was brought home to Welch. Fraud must be established by a preponderance of evidence in order to justify the setting aside of a transfer, and insolvency is not to be inferred merely from suspicious circumstances, but must be proven, like any other affirmative fact. Without further discussion of the evidence, we deem it sufficient to say that it would not justify us in setting aside the transfer of the book accounts.—REVERSED.