F. L. BIHLMEIER, Trustee, Appellee, v. HERMAN BUDZINE et al., Appellants.

**WITNESSES:** Credibility—Estoppel to Deny Credibility. A litigant may not assert the noncredibility of his own witness.

**ESTOPPEL:** Equitable Estoppel—Clothing One With Apparent Title. A creditor who claims that the actual owner of property is estopped to assert his title because such actual owner has so dealt with the property as to apparently clothe another person with the title, and has thereby misled the creditor into extending credit to such other

person, must show some actual or implied knowledge *on the part of the actual owner* that such credit was being extended.

**Headnote 1:**  4 C. J. p. 706 (Anno.); 40 Cyc. p. 2559.  **Headnote 2:** 21 C. J. p. 1178.

*Appeal from Muscatine District Court.*—A. P. BARKER, Judge.

NOVEMBER 17, 1925.

REHEARING DENIED FEBRUARY 19, 1926.

ACTION by F. L. Bihlmeier as trustee in bankruptcy against defendant Herman Budzine, to recover certain personal property as against Herman and Margaretha Budzine. From a finding of the court in favor of the plaintiff, the defendants appeal. —*Reversed.*

*Bush & Bush,* for appellants.

*G. Allbee* and *J. G. Kammerer,* for appellee.

ALBERT, J.—Appellee's claim, at the time the case was submitted, was that there was a $7,000 note (referred to as the Savage note) and two mortgage bonds, one for $4,000 and one for $5,000, of the Titus Loan & Investment Company, to which he claimed the legal title as trustee in bankruptcy for Herman Budzine; that said property was transferred by Herman Budzine to Margaretha Budzine, his mother, without consideration, and for the purpose of hindering, delaying, and defrauding the appellee, the United States district court in and for the southern district of Iowa, and the creditors whom appellee represents; that all of said property was purchased and paid for with money belonging to Herman Budzine. He further alleges that Herman Budzine, with the knowledge and consent of his mother, operated the farm hereinafter referred to, in his own name; that he transacted all business in connection with the operation of said farm, and had bank accounts in his own name in the three named banks; and that the purchasers of the notes hereinafter described learned of the possession of the property by Herman Budzine, and on the strength of such possession and apparent ownership extended credit to him.

The appellants answered, the sum total of their answer, aside from a general denial, being a plea that the property in controversy was never the property of Herman Budzine, but is and was at all times the property of his mother, Margaretha Budzine. Appellee replies by pleading that the creditors of Budzine, whom this appellee represents, were induced to extend credit to him because of the large amount of money and property which he held in his own name, and that Margaretha Budzine, by the acts and conduct set out in her answer, is now estopped from claiming said property.

Under the issues thus made, the case was tried. The following facts are either conceded or satisfactorily proved in the case.

The husband of Margaretha Budzine died on the 16th of December, 1878, leaving surviving him two daughters and the appellant herein, Herman Budzine. At that time Nellie was one year of age, Anna four years of age, and Herman two years of age. Margaretha Budzine inherited from her father an undivided one-half interest in 40 acres of land, and later acquired from her brother the other undivided one half. This occurred about 1879. She lived and reared her family on this 40-acre tract until about 1898, when the children, being almost of age, solicited her to buy a 50-acre tract of land lying on the opposite side of the road from the aforesaid 40. She felt that she would not be able to pay for it, and there was an understanding between the three children and the mother that, if they would stay with her on the farm, assist in operating it, and contribute their labor and proceeds thereof to the farm, she would buy the 50-acre tract. The children were not to marry, but were to stay with her until the same was paid for and improved. In return, they were to have their food, clothing, and the necessities of life so long as they stayed with her. The land was bought, and eventually paid for some 15 years before the commencement of this action, and numerous improvements made thereon. After the land was paid for and the improvements made, the mother and her three children continued to live on said farm and carry it on in identically the same manner as it had been carried on in all the previous years. The title to the land was in the name of the mother. She had very little education, and it was dif-

ficult for her to read and write the English language. The
children seem to have had very little schooling or education of
any kind. Naturally, as the years passed by, Herman, being
the only man, had charge of matters generally. He conducted
the farm, sold the grain and stock, collected the money therefor,
and paid the bills, taxes, expenses, repairs, etc. Some of the
money was deposited in the bank in the name of the mother,
and some in the name of Herman. From these different bank
accounts at different times, family expenses, purchases for the
farm, taxes, and other incidental matters were paid, Herman
drawing the checks; and if the check was drawn against the
account in the name of the mother, he signed the mother's
name to such check. As the years went by, they accumulated
some surplus.

A part of the personal property in controversy herein is
a $7,000 note known as the Savage note. This indebtedness
originally arose several years before the time in controversy, and
was for a much smaller amount; but, from time to time, addi-
tional loans were made to such borrower, which resulted in the
making of the $7,000 note, which was taken in the name of
Herman Budzine. In 1921, this note was renewed, and the re-
newal note taken in the name of Margaretha Budzine. Herman
Budzine says that this was done because she was asking that
the property which she possessed be turned over to her.

All of what are known in the record as the Titus bonds were
purchased on January 24, 1921, and placed in the name of
Margaretha Budzine. The $5,000 bond was wholly paid for
from funds on deposit in the bank in the name of Margaretha
Budzine. The $4,000 bond was paid for with money on deposit
in the First Trust & Savings Bank and the Hershey State Bank.
In both instances, these deposits were in the name of Herman
Budzine. As to the Savage notes, the record is not so clear as
to which of the bank accounts was drawn upon to furnish the
funds which were the basis of that loan, but it is clear that the
money that went into that loan at the various times came from
the products of Margaretha Budzine's farm.

On May 20, 1920, Herman Budzine decided to do a little
speculating. He purchased some oil leases in the state of Kan-
sas for the sum of $7,000. In payment therefor he executed

three promissory notes for $2,000 each, and one for $1,000, to one Fye, by name. Shortly after this, the Fye notes were disposed of: one note was bought by one S. G. Stein, another by R. C. Zoller, the third by F. C. Vetter, and the fourth by Fred Switzer. Herman Budzine told the salesman, at the time, that he had no money with which to pay for his purchase, and the agent told him, in substance, that he would sell the oil leases within 90 days at a profit to Budzine, so that he would not have to pay anything on the notes. It finally dawned upon Budzine that he had been deceived and defrauded.

On the 12th of October, 1921, Budzine filed his petition in bankruptcy in the Federal court, and the appellee herein was duly named trustee. In his petition he scheduled these four promissory notes as being the total of his indebtedness, and showed substantially no assets.

We are satisfied from a careful reading of this record that all of the money and property involved herein was in fact the money and property of the mother. It would be of no benefit to the profession to set out the testimony on which we reach this conclusion. We reach it more readily because of the fact that the appellee, in making his case, relied largely, if not wholly, upon the testimony of Budzine. He testifies squarely that it was all his mother's money and property at all times. The appellee, having tendered him to the court as a witness, vouched for his competency, credibility, and truthfulness. Of course, appellee was entitled to the benefit of any conflict, inconsistency, or incongruity which might be found in Budzine's testimony, and he was not precluded from calling other witnesses to contradict Budzine, if said witnesses could be produced; but Budzine's testimony, except for any inconsistencies or incongruities which there may be therein, stands uncontradicted, and therefore the appellee cannot be heard to claim that he is unworthy of belief. We have announced this rule in *Wilson v. Prettyman,* 195 Iowa 598; also in *Farmers L. & T. Co. v. Scheetz,* 196 Iowa 692, and cases there cited. More than this, appellee having alleged that the property in controversy was that of Herman Budzine, the burden of proof was on appellee to so show. Having failed to

1. WITNESSES: credibility: estoppel to deny credibility.

sustain his burden of proof, the appellee must fail on this contention.

He further contends that, by reason of the acts and conduct of Mrs. Budzine, she is estopped from claiming the property; and this is the ground on which the district court rendered decree in favor of appellee. On this issue it is equally true that the burden was upon appellee to establish the estoppel pleaded by him. It must necessarily follow, from what has heretofore been said, the $5,000 Titus bond having been wholly paid for from funds deposited in the bank in the name of Mrs. Budzine, and the bond having been taken in her name, that the court was in error in holding that the same was the property of Budzine and thus passed to appellee. Aside from this, the appellee is confronted with a more serious situation.

2. ESTOPPEL: equitable estoppel: clothing one with apparent title.

We are quite familiar with the rule that, where A leaves property in the hands of B under such circumstances and conditions as to lead other parties to believe that such property is owned by B, and knowingly permits other persons to deal with B without asserting A's ownership, estoppel may arise by the acts and conduct of A, provided that the third party believes that B is the owner of the property, and relies thereon and acts to his prejudice. The purchasers of these notes all testified that they knew nothing about the financial standing or property owned or held by Budzine. It is true that, at the time these notes were sold, he had approximately $2,400 on deposit in the First Trust & Savings Bank in Muscatine, Iowa. Stein, a purchaser of one of the notes, testified that, before he purchased it, he made inquiry of R. K. Smith, vice president of that bank, as to whether the note would be paid at maturity. Mr. Smith told Stein that "Mr. Budzine's credit was good, and the note would probably be paid." Vetter, a purchaser of one of the other notes, testifies that Smith told him that Budzine had more than sufficient money on deposit in his bank to cover his operations. Switzer, another purchaser, says that Smith told him that the note was good, in his opinion. Zoller, still another purchaser, testified that he consulted Smith for the purpose of buying a mortgage. Smith said that he had a note of Budzine's, and that he knew it was good; and when asked how he knew,

he said that Budzine had enough on deposit in his bank to more than cover it. These purchasers testified, in substance, that they relied wholly on the statement made to them by Smith as to the financial standing of Budzine, and were induced thereby to purchase the notes. Appellee insists that, although the money in the First Trust & Savings Bank was the property of Mrs. Budzine, yet, by allowing Herman to conduct the account in his own name, etc., and because the purchasers of these notes relied upon the representations made to them by Smith, the vice president of the bank, Mrs. Budzine is estopped from claiming the same. Appellee carried the burden of establishing all of the elements necessary to make this estoppel. While it is conceded that Mrs. Budzine knew that Herman was carrying this bank account in his own name, there is no showing whatever in the record that she had any knowledge that he was engaged in any dealings or transactions outside of those connected with their own farm business. The evidence in the case shows that, in all transactions of any size or moment, she was consulted before anything was done. In the absence of such knowledge or notice on her part as to any outside transactions which were being conducted or carried on by Herman, no estoppel can arise. *In re Estate of Fisher,* 128 Iowa 18.

Neither the original payee of these oil notes nor the purchasers thereof ever had any conversation with Mrs. Budzine. They base their claim of estoppel wholly on what was said to them by Smith, the vice president of the bank. Any statement made by Smith to these purchasers, in our opinion, is wholly insufficient to be the basis of an estoppel.

In the case of *Watt & Co. v. Mercer,* 170 Iowa 166, inquiry was made of the cashier of the bank as to the financial circumstances of Mercer, husband of the defendant in the action. The cashier of the bank replied in the following letter:

"I have known Mr. Mercer for years, he is a stockholder in this bank, has a good business record and is responsible for any contracts he makes."

We held that this was wholly insufficient to be the basis of an estoppel. It is also quite apparent from the situation before us that the purchasers of these notes did not extend any credit to Budzine or his mother under the circumstances shown.

Neither of them knew that these notes were being purchased by these parties, and, so far as their affirmative acts are concerned, they did nothing which could be construed as leading or inducing the purchasers to extend credit to either of them.

The appellee has failed to make out his alleged claim of estoppel herein, and his case must fail.

Very able briefs and arguments have been filed by both sides, directed to the proposition that the trustee herein has not shown himself to be in a position to prosecute this action, because it is claimed that the transfer of the Savage notes and the Titus bonds to the mother was had more than four months prior to bankruptcy; and further, that the trustee must show that the claims which he seeks to enforce had been reduced to judgment before he was appointed trustee. We pretermit any discussion or decision on these questions, preferring to dispose of the case on what has heretofore been said.—*Reversed.*

FAVILLE, C. J., and EVANS and MORLING, JJ., concur.