H. H. HOGEBOOM, Appellee, v. W. R. MILLIMAN et al., Appellants.

**FRAUDULENT CONVEYANCES:** Confidential Relations—Intent of Grantor. A conveyance by an insolvent son to his parent for a valid and adequate consideration will not be decreed fraudulent if the parent acted with the one intent to protect himself on his claim against the son, even though the son was known to be insolvent, and even though the son was actuated by a fraudulent purpose.

Headnote 1:   27 C. J. pp. 627, 629, 630.

Headnote 1:   12 R. C. L. 532.

*Appeal from Harrison District Court.*—JAMES S. DEWELL,
Judge.

DECEMBER 14, 1926.

An action to quiet title and to enjoin the defendant Milli-
man, sheriff, from issuing deed under execution sale. Decree for
plaintiff. Defendants appeal.—*Affirmed.*

*P. E. Roadifer,* for appellants.

*William P. Welch,* for appellee.

ALBERT, J.—H. H. Hogeboom and R. T. Hogeboom are re-
spectively father and son. On January 6, 1922, R. T. Hogeboom
and wife made to H. H. Hogeboom a warranty deed for the town
property in controversy herein. This deed was not recorded until
October 20, 1922. R. T. Hogeboom, at the time in controversy
herein, was indebted to the Pisgah Savings Bank, and had some
other indebtedness. He was the owner, at the time, of 160 acres
of land, on which Annis & Rohling held a first mortgage of
$10,000, and the Pisgah Savings Bank a third mortgage. The
Annis & Rohling mortgage was foreclosed, and the property sold,
leaving a deficiency judgment of $1,200. The Pisgah Savings
Bank did not redeem, and the evidence satisfactorily shows that
R. T. Hogeboom was, at all times concerned herein, in financial
straits, and probably insolvent. This bank commenced an action
against R. T. Hogeboom and wife on October 21, 1922. The peti-
tion was filed October 17, 1922, and it went to judgment on
November 17, 1922. Execution was issued on this judgment, and
the property sold to the Pisgah Savings Bank for $1,500. The
cashier of the Pisgah Savings Bank testifies that the property
was worth from $2,000 to $2,500. After the sale on the Pisgah
Savings Bank judgment, H. H. Hogeboom instituted this action,
on April 4, 1924, alleging that he is the title holder of this prop-
erty in fee simple, and asking that the sheriff be restrained and
enjoined from issuing a certificate of purchase to the Pisgah Sav-

ings Bank, and also from issuing a sheriff's deed to said premises under said sale.

Defendants answered, and filed a cross-petition alleging the conveyance by R. T. Hogeboom to H. H. Hogeboom to be fraudulent, and made with intent to defraud the creditors of R. T. Hogeboom. They further alleged that the conveyance was made to avoid the judgment of the Pisgah Savings Bank, and that H. H. Hogeboom has no right, title, or interest in said property, except as the same may be held for the benefit of R. T. Hogeboom and his creditors.

Inadequacy of consideration is material in ascertaining whether there was fraudulent intent. *Hunt v. Hoover*, 34 Iowa 77. It is a badge of fraud, but is not alone sufficient to show want of good faith in the purchaser. *Flood v. Bollmeier;* 165 Iowa 88; *Urdangen v. Doner*, 122 Iowa 533. If the creditor-grantee takes in good faith, he is protected though he knew that the debtor was prompted by fraudulent intent. *Rosenheim v. Flanders*, 114 Iowa 291; *Chase, Merritt & Blanchard v. Walters,* 28 Iowa 460; *Aultman, Miller & Co. v. Heiney*, 59 Iowa 654; *Stroff v. Swafford Bros.*, 81 Iowa 695. This is true even though he knows that there are other creditors, and that the effect of the debtor's action will be to defeat them. *Rosenheim v. Flanders,* supra; *Carson, Pirie, Scott & Co. v. Byers & Eggers*, 67 Iowa 606; *Crawford v. Nolan*, 70 Iowa 97.

While the evidence in a given case may abundantly show that the debtor made the conveyance with a fraudulent intent, this is not sufficient to set aside the conveyance, but the evidence must further show that the grantee took the conveyance for the purpose of aiding in the fraud. *Richards v. Schreiber, Conchar & Westphal Co.,* 98 Iowa 422; *Rosenheim v. Flanders,* supra. In *Barks v. Kleyne,* 198 Iowa 793, at 795, the court said:

"Briefly stated, the creditor of an insolvent debtor must act in good faith, and not intermingle his motive and intent with the debtor to assist the latter in his scheme to defeat other creditors. If he does, he will find himself stripped of the protection which the law otherwise would accord him."

In *Pieter v. Bales*, 126 Iowa 170, the substance of the holding was that the acceptance of payment of a debt from an insolvent debtor is not in itself a fraud on other creditors, and a creditor may accept such payment although he knows that his

debtor is in financial straits. *Curie v. Wright,* 140 Iowa 651. The fact that by so doing he prefers one creditor over others does not in itself render the sale fraudulent. *Steinfort v. Langhout,* 170 Iowa 422.

Largely, the facts in the case are not disputed. At the time of the making of this deed, R. T. Hogeboom was in financial distress. The Annis & Rohling mortgage was being foreclosed, and besides the indebtedness to the Pisgah Savings Bank, he had other outstanding indebtedness. The property in controversy was a lot and a half in the incorporated town of Pisgah, on which there were two buildings,—a dwelling house and a pool hall.

It appears that R. T. Hogeboom was married in 1906; that he went to South Dakota, where he took up a piece of land; and that his father, appellant herein, furnished him some farm equipment and money at that time, amounting to nearly $500. The son was a member of two insurance orders, and the father kept up his assessments while he was in South Dakota. He advanced him money at various times, and later, when he came back to Iowa, advanced him money to aid in the purchase of the farm on which the Annis & Rohling mortgage rested. He also advanced him, at different times, money to pay his interest, which amounted to $300 at each interest date, interest being paid semiannually. It is the usual story of a father who is attempting to aid a son who seems not to have been very much of a financier. He testifies that the son promised to reimburse him for the money thus advanced, and that the amount thus advanced to the son by him was about $2,700.

On the date the deed was executed, the son went to an adjoining town, and he and his wife executed the deed, and on the same day delivered it to the father, at Sargents Bluffs in the same county. The father further says:

"The first that was said about the money he owed me was when he made the deed to the land. He told me, if I wanted security, I better take the property. He told me he wanted to pay me back for what I had helped him. I don't think I ever saw the property."

After the delivery of the deed, the son continued to live in the residence property on this lot, and later moved out, and the property was rented by a local party at Pisgah, and the father received one month's rent, and says that he directed the local

party collecting the rent to turn the rent over to his son. Caldwell, the party who had charge of renting the property and collecting the rent, confirms the father's statement that he was directed to give the rent to the son if he wanted it. While there was a conversation between the father and son a short time before the deed was delivered, the son did not tell the father of his financial condition or of his indebtedness; but apparently the father realized that the son was in financial trouble.

Under this state of facts, which does not purport to set out all the evidence, but simply summarizes it in a general way, the district court held with the father.

As suggested in the line of authorities above cited, it is not sufficient to show that the grantor in the conveyance made the same when he was in financial distress, and with intent to defraud his creditors, but, to avoid such conveyance as fraudulent, to such testimony must be added a showing of a participation by the grantee in the intent to defraud the creditors of the grantor. There can be no question, under this line of testimony, that this father had been aiding the son, from time to time, in a financial way, and that there was an understanding that the father was to be compensated for the finances thus advanced. While, in all transactions of this kind between father and son, no books were kept or specific charges made, yet, at the same time, we are satisfied, under this testimony, that the advances were made with such understanding.

There is no showing of inadequacy of consideration, and the only question left, therefore, is whether or not, under the evidence, it can be said that the appellant's testimony shows, by a preponderance, that the father participated in the intent to defraud the creditors of R. T. Hogeboom. We do not feel warranted, under the testimony introduced, in so holding, and it must therefore follow that the ruling of the district court was right.—*Affirmed.*

DE GRAFF, C. J., and EVANS and MORLING, JJ., concur.