CHEROKEE AUTO COMPANY, Appellant, v. LEO STRATTON et al., Appellees.

No. 40066.

*W. P. McCulla,* for appellant.

*J. F. Loughlin* and *A. M. Galvin,* for appellees.

KINDIG, J.—It appears that the defendant-appellee Leo Stratton purchased an automobile on credit from the plaintiff-appellant, Cherokee Auto Company. To evidence and secure the purchase price of the car, Leo Stratton and his wife, the appellee Esther Stratton, executed a note and mortgage. Thereafter, the mortgaged property was sold, and the proceeds therefrom applied on the mortgage indebtedness. By such application, the original indebtedness was reduced to the sum of $485.08. So, on March 12, 1927, the appellant commenced an action in the Cherokee County district court against the appellees Leo and Esther Stratton, for the purpose of collecting from them the balance thus due, and judgment was recovered against these debtors for that amount on April 14, 1927. Such is the indebtedness appellant seeks to satisfy from certain real estate conveyed by appellees Leo and Esther Stratton (Esther is a nominal party only, and will not be mentioned hereafter), as grantors, through a deed to the appellee Margaret Stratton (Leo's mother), as grantee. This real estate was thus transferred by Leo to his mother on April 9, 1927. More particularly described, the property thus given Margaret Stratton by her son, Leo, was an undivided one-eighth interest in a quarter section of Cherokee County land, subject to a life estate held by Margaret, the grantee.

Appellant seeks to set aside the deed from Leo to his mother on the theory that the same is without consideration, fraudulent,

and made for the purpose of preventing the collection of the above-named judgment. Appellees, on the other hand, maintain that the mother paid a good and valid consideration for Leo's interest in the farm, and acted in the premises without fraud or bad faith.

Elaborating upon the facts, appellees insist that the quarter section of land was encumbered by a $4,000 mortgage, and that Leo owned only an undivided one-eighth interest in the equity, subject to a life estate in Margaret. The interests of Margaret and Leo arose out of a will executed by Leo's father, who was the husband of Margaret. After the testator's death, his will was admitted to probate, Margaret was appointed executrix thereof, and, at the time the deed was executed from Leo to his mother, the estate was being administered. In addition to the life estate, the will gave Margaret the personal property, subject to the payment of the decedent's debts. Not only was Leo indebted to the estate directly for his own obligations to the father, but indirectly, as well, for his liabilities guaranteed by the father, which were demands against the estate. Those obligations incurred directly or indirectly by Leo which were claims against the estate amounted to more than $5,546.25, plus interest. Consequently, when Margaret took the deed from Leo, appellees declare that she was protecting herself against loss that might arise through the use of the personal property otherwise belonging to her for the payment of creditors because Leo did not pay his debts. Her action in that regard, it is asserted, was in the best of faith.

Consideration from Margaret to Leo arose, it is said, in the following manner: First, Margaret agreed to pay all the debts and obligations of the estate, including those incurred for Leo and others, as well, so that all the personal property would be hers; and second, when she received all such personal property, including Leo's notes, she would return those evidences of indebtedness to Leo when the estate was closed, and then cancel all his obligations. Accordingly, Margaret proceeded to pay the debts and obligations of the estate. $1,874 thus paid on such debts was procured by Margaret from personal property belonging to Leo, on which the estate held a mortgage, and for the balance of the cash necessary for debt liquidation purposes, Margaret used her own rent money, coming from the life estate

in her husband's realty before described. All debts and claims against the estate have been paid by Margaret, except two items, respectively, for $215 and $300. Furthermore, Margaret delivered Leo's notes to the attorney for the estate, in order that he might mark them satisfied in full when the estate is closed, the debts are all paid, and the personal property delivered to her, as provided by the will. Thus the respective parties present their conflicting claims. The district court found the facts as claimed by Margaret, and dismissed appellant's petition.

In effect, appellant presents two reasons why the judgment of the district court should be reversed. They are: First, that the conveyance was without consideration; and second, that the deed from Leo to Margaret was made with the intent on the part of both grantor and grantee to defraud creditors. For convenience, the propositions will be considered in the order named.

I. Was there consideration for the conveyance from Leo to his mother? Manifestly so, when the facts are given full significance. Mrs. Stratton, Leo's mother, received through her  husband's will, not only the life estate, but also, as before explained, the personal property, subject to the debts. If there were no debts, she would receive all the personal property. Also, it is evident that the portion of the personal property to be received by Margaret, if the whole were not consumed in paying debts, would be determined by the amount of such personal property necessary for satisfying the estate's creditors. Leo was a debtor of the estate, directly and indirectly, as above stated. Had he paid the debts directly due the estate from him, the amount which his mother would otherwise have to expend from her own funds for the purpose of saving the personal property would be correspondingly less.

When Margaret, under the agreement aforesaid, consented that Leo's notes might be canceled and returned to him, she jeopardized the personal property to that extent, and made it necessary to use her own funds *pro tanto* to liquidate the indebtedness for which the estate was liable. There apparently was no other personal property of sufficient value to satisfy the estate's debts. Through that agreement, Margaret not only assumed liability for the estate's obligations, but also protected

Leo, to the extent that she herself paid the same; for Leo's notes were assets of the estate, and creditors could demand that the executrix collect the same for the payment of just claims. Obviously, legal consideration was given by Margaret, because she agreed to pay all the claims against the estate, including obligations owed and incurred by Leo.

But appellant argues that the contract is executory, and therefore void as against creditors. For the support of this contention, appellant cites *Graham · v. Rooney*, 42 Iowa 567;  *Strong v. Lawrence*, 58 Iowa 55; · and *Jasper County Sav. Bank v. Saheroff*, 205 Iowa 774. A review of those authorities will convince the reader that the cases are not in point. *Jasper County Sav. Bank v. Saheroff* (205 Iowa 774), supra, involved an agreement for the application of one indebtedness on another, but the contract was never carried out. *Graham v. Rooney* (42 Iowa 567), supra, and *Strong v. Lawrence* (58 Iowa 55), supra, have to do with the conveyance of real estate, based upon a promise to support in the future. Both contracts were entirely executory in their nature, and it was said that such an agreement defrauded creditors. Here, however, the land in question had been conveyed by Leo to his mother. The personal property covered by the chattel mortgage held by the estate was sold, and the proceeds applied by Margaret on the proper indebtedness. All the notes executed by Leo and held by the estate as an asset were delivered by Margaret to a third party, the attorney for the estate, with instructions to cancel and satisfy them in full, and deliver the instruments to Leo when the estate was closed and the personal property delivered to Margaret.

Every obligation against the estate has been paid by Margaret except the two items before mentioned, which aggregate $515. With the exception of the $1,874 received by Margaret from the sale of the mortgaged chattels, every cent of the indebtedness paid was from moneys belonging to her individually. By so paying the estate's indebtedness from her own funds, she has expended more than the value of the real estate received. It is expected that Margaret will soon have sufficient funds from her own resources with which to pay the remaining $515. Then she may receive the personal property and close the estate, upon

which occasion the attorney for the estate, under the instructions previously mentioned, will deliver the canceled and satisfied notes to Leo. Plainly, then, there is a distinction between the facts here presented and those involved in the cases cited by appellant. Each obligation of the contract has been performed except the payment of said remaining $515; for, when that is done, the attorney for the estate automatically will be required to deliver the canceled notes to Leo. Under those facts and circumstances, it cannot be said that the contract is executory in such a sense that because thereof the transaction is fraudulent for want of consideration.

Possibly Margaret cannot hold the real estate in question as owner if she does not pay all the claims and the estate's creditors compel Leo to pay the notes. Such event has not happened, and probably never will. Anyway, Margaret is entitled to a reasonable time, in accordance with the agreement, in which to pay the small balance due on the claims filed against the estate. Appellant will be given protection, as hereinafter provided, in the event Margaret fails to pay such debts and have the notes delivered to Leo.

II. Assuming, without conceding, that there was consideration, appellant further argues that Leo's interest in the land was received by Margaret in an endeavor on the part of both  to defraud creditors. A basis for this assertion is claimed by appellant in the fact that Leo, after the deed had been executed and delivered, stated that the purpose of the transaction on their part was to prevent his creditors from levying on the property.

That, however, is not enough to set aside the deed to Margaret. She too, under the circumstances, must have entered into the scheme to defeat Leo's creditors, before the conveyance can be canceled. *Grant v. Cherry,* 199 Iowa 164; *Clark v. Clark,* 209 Iowa 1179; *Barks v. Kleyne,* 198 Iowa 793; *Carlisle v. Milliman,* 199 Iowa 949; *Erusha v. Wisnewski,* 207 Iowa 1187. As before indicated, Margaret acted in good faith, and gave a valuable consideration. Hence, the transaction cannot be set aside by creditors, even though Leo intended fraud. See cases above cited. During the trial, Margaret testified that she did not know of Leo's debt to appellant when the deed was taken. Further,

she stated that the deed was accepted by her in good faith, and in an attempt to realize something on the indebtedness Leo owed the estate. Again, it is to be noted that Margaret, when taking the land, did not receive property worth more than $1,000, while she has already expended a much larger sum in paying the debts of the estate in order that Leo's notes may be returned to him, marked satisfied and canceled. There is no evidence, direct or circumstantial, which in any way indicates that Margaret entered into any scheme with Leo to defraud the latter's creditors. Clearly, then, there is no ground for reversal.

Nevertheless, as before stated, future events may defeat the final culmination of the plan through which Margaret is to pay the remaining debts and permit Leo to receive the canceled notes. Should Margaret fail to satisfy such debts, creditors might compel her, as executrix, to collect from Leo the notes in question. This contingency would affect the consideration, because, under the assumed facts, Leo would not be absolved from paying the notes. While Margaret, in that event, might not have full title to the land, yet she would have an equitable lien upon it for just expenditures made by her in honestly carrying out the scheme. *Farmers & Merch. Bank v. Daiker*, 166 Iowa 728 (local citation 743). Undoubtedly appellant, under the supposed circumstances, could obtain the excess in the land, if any, after Margaret received the return of her expenditures. However, if Margaret pays the debts and Leo obtains the notes, the title in the former will be absolute.

Wherefore, the judgment and decree of the district court is modified so that it will not be an adjudication of appellant's right to proceed further in the premises in the event the above-named contingency arises; otherwise, the same is affirmed.— *Modified and affirmed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.