ALBERT LIETZ, Appellee, v. LOUISA GRIEME et al., Appellants.

No. 40733.

MAY 5, 1931.

REHEARING DENIED OCTOBER 5, 1931.

1306

Whitney, Whitney & Stern, for appellants.

Bailie & Edson, and C. H. Wegerslev, for appellee.

KINDIG, J.—Louisa Grieme, Carsten Grieme, Ed Lehnhardt, Emma Lehnhardt, Meta Moschell, and Albert Moschell are defendants and appellants, but only two of them, Meta Moschell and Ed Lehnhardt, are directly interested in this appeal.

Albert Lietz, the plaintiff-appellee, has a claim against the appellant, Louisa Grieme, and her husband, Carsten Grieme, for $4,733. This claim grew out of three promissory notes.

On July 9, 1928, the appellant, Louisa Grieme, together with her husband, conveyed by quit-claim deed to the appellants, Meta Moschell and Ed Lehnhardt, a tract of land in Buena Vista County consisting of approximately 102 acres. At that time the grantor, Louisa Grieme, and her husband were insolvent and had no other property from which to satisfy the said indebtedness then due appellee. Consequently, on March 29, 1930, the present proceeding was commenced by the plaintiff, and the land, above-named, attached. After judgment was obtained, execution issued but the sheriff was unable to find any property belonging to the appellant Louisa Grieme or her husband other than the above mentioned realty, and levy thereon was duly made as by law provided. The district court found that the aforesaid conveyance from Louisa Grieme to Meta Moschell and Ed Lehnhardt was in fraud of creditors, and therefore null and void. Accordingly the conveyance was set aside, but Meta Moschell was given a lien on the land for the sum of $859.75 without interest.

Complaint is made by Meta Moschell because the district court did not allow her interest on the said amount; and the appellant, Ed Lehnhardt, asks a reversal for the reason that the district court set aside the deed. Consideration will first be given to the claim of appellant Ed Lehnhardt.

I. That appellant's alleged interest in the real estate in question arose out of the following facts. William Lehnhardt, now deceased, brother of Ed, sold the above-named land to the latter on June 5, 1919, for $25,000. Of this sum, the appellant Ed Lehnhardt paid $200 in cash when the contract was made, and $5,000 in cash on March 1, 1920. Under the terms of the contract, Ed should have paid William $5,400 additional on December 15, 1922. If such last-named payment had been made, William, under the written stipulation, was required to convey the real estate to Ed providing the latter in turn executed a note to said vendor for $14,400, payable March 1, 1930, secured by a first mortgage on the real estate. The aforesaid item of $5,400 represented a first mortgage loan then on the land.

Ed, however, did not pay the $5,400 due December 15, 1922, and William was required to obtain a new loan for the purpose of paying off the past due mortgage. Apparently Ed did not wish to bear the financial burden further, and, in June, 1923, turned the property back to William, who immediately took possession of the premises. The appellant, Ed Lehnhardt, in order to induce William to retake the land, executed to the latter a note for $1,700 which afterwards was paid.

A dispute arises concerning the basis upon which the land was returned to William. According to Ed, William agreed to repay the former all moneys he had in the land. Such agreement, under Ed's version, included the $5,200 cash paid together with other expenditures amounting in all to $7,800.39.

On July 5, 1928, William Lehnhardt died at Minneapolis, Minnesota, leaving as his only heir at law Louisa Grieme, his mother, who is the grantor named in the aforesaid deed, wherein Meta Moschell and Ed Lehnhardt, the appellants, are grantees. An administrator was appointed for William's estate, but neither Meta Moschell nor Ed Lehnhardt filed their claims therewith. Immediately after, or at the same time, the administrator was appointed, Louisa Grieme made the deed conveying William's real estate to the appellants, Meta Moschell and Ed Lehnhardt. Notation is to be made that Louisa Grieme was the mother not only of William, but of Meta Moschell and Ed Lehnhardt, as well. Carsten Grieme, the defendant above named, is the second husband of Louisa Grieme. When William died, Louisa Grieme and her husband, Carsten Grieme, were indebted to appellee,

as previously explained. Meta Moschell and Ed Lehnhardt, when they received the deed from the mother, Louisa Grieme, understood and knew that she was indebted to appellee. Upon that occasion, neither Louisa Grieme nor her husband had any other property of any kind with which to pay appellee's obligation.

"If, as a matter of fact, the 'conveyance' was a mere voluntary gift * * * and made at a time when the grantor * * * was insolvent, it would be subject to successful attack in a court of equity by creditors." Erusha v. Wisnewski, 207 Iowa 1187 (local citation, 1188).

Was the conveyance from Louisa Grieme to the appellants, Meta Moschell and Ed Lehnhardt, in the case at bar merely a gift or was the transaction supported by a legal consideration? That is the question here.

Clearly the indebtedness due the appellant, Meta Moschell, from her mother, Louisa Grieme, was not adequate to support the conveyance of this farm as against creditors. Said indebtedness did not exceed $859.75, while the farm, according to appellant's own version, is worth $12,500. While the indebtedness to Meta would not support the deed, yet she would be entitled to a lien on the real estate as found by the district court. See Cherokee Auto Company v. Stratton, 210 Iowa 1236. Her claim, therefore, could in no way under the circumstances support the conveyance to the appellant, Ed Lehnhardt. Then, is there consideration upon which to base the transfer from Louisa Grieme to her son, Ed? Reference is made by appellants to the transaction whereby Ed reconveyed the land to his brother, William, in June, 1923. Under the reconveyance, before explained, Ed claims there was an oral agreement made by William to repay to the former all moneys invested in or expended for the land. So, appellants claim that Louisa Grieme had a right to convey the land in the manner and way aforesaid in order to carry out William's agreement with Ed.

If there is a consideration supporting the conveyance to Ed Lehnhardt in the case at bar, it must be found in the reconveyance transaction. Consideration therefore will be given to that subject.

There is much confusion between appellant's pleading and

his own testimony in this regard. Likewise, there is inconsistency between this appellant's testimony and that of his supporting witnesses. Again, there is contradiction between appellant's claim and the facts and circumstances surrounding the transaction. It is pleaded by appellant in his answer as follows:

"That on said date (June, 1923) it was mutually agreed between this answering defendant (appellant, Ed Lehnhardt) and (the) decedent, Wm. Lehnhardt, that contract of the sale of the premises should be rescinded and it was orally agreed that this answering defendant should turn over to the said William Lehnhardt, immediate possession of the premises together with the lease existing thereon and approximately 800 bushels of corn then kept in a crib upon the premises of a fair and reasonable value of $480, and that this answering defendant was to pay all interest upon the purchase price up to said date. That this amount was computed and this answering defendant executed his note therefor which was in the approximate amount of $1,700. That this note was thereafter fully paid and settled in full. That in consideration of the premises and the acts upon the part of this answering defendant the said Wm. Lehnhardt agreed that whenever the farm could be sold or otherwise disposed of that he would repay to this answering defendant all sums of money put into the premises by him."

The appellant, Ed Lehnhardt, however, when testifying said:

"We (the appellant, Ed Lehnhardt, and his brother, William Lehnhardt, now deceased) agreed * * * if I would leave the corn and that year's crops, growing crops, * * * that he (William) would take the farm back with the agreement that I would leave all the crops and pay me back all the money I had in it."

This testimony is inconsistent with the pleading aforesaid, because in the testimony there is no contingency, while in the pleading the money was to be repaid only in the event the farm was sold or otherwise disposed of.

Another discrepancy appears between the testimony of the appellant, Ed Lehnhardt, and that of his witness, Albert Moschell, Meta's husband. Mr. Moschell stated that he had a con-

versation with William during his lifetime, wherein William declared that when the land was disposed of he would repay the appellant, Ed Lehnhardt, every cent that the latter ''had in it.'' Therefore Ed's version of the transaction is disputed by the testimony of Mr. Moschell. Not only does inconsistency appear in the manner and way suggested, but, as previously indicated, there is confusion when appellant's claim is considered with the surrounding facts and circumstances. At the time the land was returned to William, Ed, regardless of his testimony, was delinquent. He had agreed to pay William $5,400, but did not meet that obligation. According to the testimony of Henry F. Wehking, Ed Lehnhardt returned the property to William because ''it was too much burden for him the way times were.'' Because of the delinquency, it was necessary for William to renew the $5,400 then on the land. Under what obligation, then, was William to Ed? Why should William agree to repay Ed for the money invested? There was a forfeiture clause in the contract, and, under the statute relating to forfeitures, William could have declared the contract forfeited and kept all payments made by Ed.

It seems significant that William made certain demands before he retook the property: First, the crops, rents, etc.; and second, the payment of delinquent interest. A $1,700 note was executed by Ed to William because of these delinquencies, and after the land was retaken by the latter, the former paid that note. Were there to be a mere rescission, why did Ed execute the $1,700 note? Obviously it was not intended by William to repay Ed regardless of consequences. Perhaps William would have repaid Ed if the land could have been sold for enough to compensate the former under the contract, and leave a sufficient balance for the latter. But there is no adequate and convincing testimony that any other agreement existed between the parties. Manifestly, the evidence does not sustain appellant's claim. An appropriate excerpt may be quoted at this juncture from Ransom v. Lochmiller, 207 Iowa 1315, reading on page 1320:

''It is not ordinarily expected of family transactions that testimony of disinterested witnesses, either confirming or refuting that of the parties immediately concerned, may be obtained;

but it does not follow from this alone that the interested testimony is, merely from the fact that it is not contradicted by direct evidence, to be accepted, or from the fact that it is not confirmed by such evidence, is to be rejected. The testimony must be subjected to the scrutiny of the triers of fact in the light of reason and common experience. Fraud is an offense of darkness.''

Again in Webber v. King, 205 Iowa 612, reading on page 617, we declared:

''Fraud will not be presumed. Nevertheless, clear and convincing evidence of bad faith cannot be ignored, nor can the court refuse to draw proper inferences from 'facts and circumstances' pointing irresistibly to 'fraud'. Johnson v. Carter, 143 Iowa, 95; Grace v. Callahan, 189 Iowa 213; Rhodes v. Uhl, 189 Iowa, 408. Johnson v. Carter, supra, contains this apt language: 'The trail of fraud is not always easily followed, and while the law charitably prefers to sustain all business transactions which are reasonably explainable on the theory of fairness and honesty of all parties concerned, yet courts are not at liberty to ignore clear and convincing indicia of bad faith, or refuse to draw inferences of fraud from circumstances which irresistibly point to that result.' Again in Grace v. Callahan, supra, we said: 'Fraud is often difficult to prove, and is seldom established by the admissions of the party or by positive testimony alone. It may be, and usually is, to be found in the circumstances and results of the transaction.' ''

So, in the case at bar, the direct statements of the appellant, Ed Lehnhardt, are overcome by the circumstances and inconsistencies. Plainly appellant returned the land to William, not because the money invested and expended was to be repaid, but rather, because of the ''unbearable burden.'' The appellant himself does not seem to know just what were the terms of the alleged agreement with William. He pleads one thing and testifies to another. Furthermore, the facts and circumstances surrounding the transaction itself are such as to entirely contradict appellant. William was in no way indebted to appellant at the time the land was retaken. Rather, appellant was greatly indebted to William upon that occasion. Moreover, part of the

obligation was past due. There obviously was no thought in William's mind at the time that Ed should be repaid, but rather, William considered Ed further indebted to him. This appears from the fact that William demanded and received from Ed an additional note for $1,700 and took from the latter the rents and grain. That is utterly inconsistent with the thought that William was to repay Ed regardless of the circumstances. Whether William agreed to repay Ed in the event the land sold for sufficient to compensate the former, and leave something remaining for the latter, we need not now decide because such contingency has not happened. It is enough to say that this record does not support the claim of the appellant, Ed Lehnhardt. As a result, there is no consideration for the conveyance made by Louisa Grieme to him. Mrs. Grieme is under no circumstances indebted to the appellant, Ed Lehnhardt. No claim of that kind is made. But appellant declares that because of the agreement with William, amounting to a rescission, there is a lien on the land for the amount due the former. Hence, according to appellant, because the land is burdened with this lien, Louisa Grieme had a right, as against the appellee, to convey the same over to the former. Such alleged lien, however, must depend upon the existence of the agreement aforesaid entered into between the appellant, Ed Lehnhardt, and his brother, William, when the land was turned back to the latter. In view of the fact that there is no such agreement, there cannot be a basis for the lien. The reconveyance was not a mere rescission, but amounted to a settlement under the record.

The district court, under the facts and circumstances, properly set aside the deed.

■ II. Regardless of the aforesaid alleged rights and equities of the appellant, Ed Lehnhardt, Meta Moschell, one of the appellants, claims an interest in the foregoing real estate because of an indebtedness due from her mother, Louisa Grieme, abovenamed. Such indebtedness arose, this appellant declares, because she loaned her mother money and furnished her care and support.

As before stated, the district court allowed Meta's claim to the extent of $859.75 without interest. No interest was allowed in the court below because in the opinion of that tribunal such item was fully covered by the rents and profits which Meta

received while in possession of the real estate under the deed. A modification of the district court's judgment and decree in this respect is asked by Meta.

It seems that the deed was given by Louisa Grieme to Meta and her brother, Ed, on July 9, 1928, as before related, and the decree in this cause was entered in the district court November 8, 1930. Approximately two years transpired after the deed was given until it was set aside. Appellee prayed for general, equitable relief and it fairly appears from the circumstances and inferences to be drawn from the evidence, that Meta had possession of the real estate during the two-year period. She has made no accounting to her mother for the rents and profits.

Therefore, we cannot say that the district court erred in disallowing a lien on the land to protect the interest on Meta's claim so far as the appellee's rights are concerned. But to the extent that Meta and her mother, Louisa Grieme, are involved, the interest may be allowed, for between them the interest is a valid obligation, even though it is not as against the appellee. Then, as between this mother and daughter the rents and profits need not be held to have satisfied the interest. Whether the interest was so satisfied, would depend upon the contract between those two parties. So, if the land in question is more than sufficient to take care of appellee's claim, then, in that event, Meta should have a lien on the balance of the proceeds from such land for the purpose of protecting the interest in question, providing the same has not already been paid as between her and the mother. If, as it appears, the judgment and decree in the district court is contrary to this conclusion, it should be modified to that extent.

Wherefore, the judgment of the district court, with the exception of the modification above indicated, should be and hereby is affirmed.—Modified and Affirmed.

STEVENS, EVANS, MORLING, ALBERT, WAGNER, and GRIMM, JJ., concur.