N. W. PIKE, Trustee, Appellee, v. LILLIE M. COON et al., Appellants.

No. 42312.

FEBRUARY 13, 1934.

Griffin & Griffin, for appellant.

O. P. Bennett and Prichard & Prichard, for appellee.

KINTZINGER, J.—In April, 1931, the defendant Lillie Coon, for the alleged consideration of $500, conveyed to defendant Gladys Hennings, her daughter, 80 acres of rough, unimproved, uncultivated, unbroken, and partly timber land in Woodbury county, Iowa. At that time defendant Mrs. Lillie Coon and her husband owed the Mapleton Trust & Savings Bank of Mapleton, Iowa, about $650 of which $617 was still due in December, 1931. Mrs. Coon and her husband were, during all that time, working and living on another 80-acre farm. Being unable to pay the note and being pressed by the bank, Mrs. Coon and her husband, in January, 1932, commenced voluntary bankruptcy proceedings. The vice president of the bank was appointed trustee in bankruptcy, and, as such, brought this action to cancel the deed referred to, on the ground of fraud and want of consideration. The deed was executed and duly recorded in April, 1931, and the bankruptcy proceedings were not commenced until January, 1932. The allegations of the petition with reference to the fraud and want of consideration were denied in the answer filed by both defendants.

At the time the deed was executed, the defendant Gladys Hennings and her family lived on another farm about 20 miles away from her parents. Mr. Hennings was getting $60 a month and free rent for running the farm on which they lived, and both Mr. and Mrs. Hennings also earned money in other work; Mrs. Hennings earned some additional money by raising and selling chickens and other small farm products. Mrs. Hennings had been married several years before she purchased the land from her mother. During that time, through their joint efforts, she claims they saved something over $500, out of which she paid her mother $500 in cash for the real estate in question.

In July, 1930, the defendant Lillie Coon and her husband made an application to the Mapleton Trust & Savings Bank for a loan of

$700. At that time they submitted a credit statement showing a net worth of $10,000 in real and personal property. The real estate in question was then listed at $6,000. In asking a renewal, they filed a second credit statement in July, 1931, showing a net worth of $8,948. The 80-acre tract in question was then listed at $2,400. In December, 1931, on requesting a further renewal, they filed a third credit statement showing a net worth of $7,508. In this state-. ment the value of the real estate in question was again listed at $6,000. In all three statements the only liability listed outside of a real estate mortgage upon an 80 acres not in question was the obligation to the bank upon the note in question. Although the real estate in question was listed in all three statements, it was sold to her daughter and the deed recorded in April, 1931. The valuation of the nonexempt personal property listed in all three statements was more than double the amount of Mrs. Coon's liability to the bank, and the record shows that the bank, in making the loan, relied mainly upon the personal property listed. The vice president of the bank said: "I didn't notice the big discrepancy in the value of the land at that time. I was more interested in the personal property at that time."

In filing their petition in voluntary bankruptcy, Lillie Coon and her husband listed about $1,300 as debts owing creditors which included the note of $617 due the bank, but the bank's claim was the only one allowed in the bankruptcy proceedings. The purpose of making these credit statements to the bank was to enable Mr. and Mrs. Coon to receive a loan from the bank. If these statements were in fact not true, they might establish fraud in obtaining the loan. The record, however, does not show that the statements, so far as they related to the personal property listed, were not true in January and July, 1931. Neither is there any testimony tending to show that Lillie Coon was insolvent at those times, or that Mrs. Hennings knew anything about her parents' financial condition at that time. The deed to Gladys Hennings for the land in question was executed and duly recorded in April, 1931. In order to prove the deed invalid, it was necessary for the plaintiff to show that Mrs. Coon was insolvent at that time; that Mrs. Hennings had knowledge thereof; and that the deed was executed in contemplation of insolvency. No such facts have been shown by the evidence.

The rule in transactions of this nature between members of the same family, one of whom is claimed to be insolvent, or in failing

circumstances, will be closely scrutinized, and, if the taint of fraud be found or is fairly to be inferred, they will not be upheld. The grantee under such circumstances is not entitled to be considered a bona fide purchaser. Ransom v. Lochmiller, 207 Iowa 1315, 224 N. W. 469; Lietz v. Grieme, 212 Iowa 1305, 236 N. W. 395; Webber v. King, 205 Iowa 612, 218 N. W. 282; Howell v. Howell, 211 Iowa 70, 232 N. W. 816.

It is also the rule that if, as a matter of fact, the conveyance was a mere voluntary gift and made at a time when the grantor was insolvent, it should be set aside in a court of equity in an action therefor by creditors. Erusha v. Wisnewski, 207 Iowa 1187, 224 N. W. 517; Lietz v. Grieme, 212 Iowa 1305, 236 N. W. 395.

It is also the rule of law that "to amount to such fraud as would justify the court in setting aside a conveyance on account thereof both the grantor and grantee must either have participated therein or the grantee must have possessed such notice as would have put him upon inquiry as to grantor's intention." Ford v. Ott, 182 Iowa 671, 164 N. W. 629; Tenold v. Klimesh, 160 Iowa 410, 141 N. W. 1046; Atkinson v. McNider, 130 Iowa 281, 105 N. W. 504; Witham v. Blood, 124 Iowa 695, 100 N. W. 558; Erusha v. Wisnewski, 207 Iowa 1187, 224 N. W. 517; Thompson v. Zuckmayer, 94 N. W. 476.

Although the family relationship between the grantor and the grantee requires close scrutiny on the evidence of fraud, the relationship does not in itself establish fraud. In the case of Erusha v. Wisnewski, 207 Iowa 1187, loc. cit. 1189, 224 N. W. 517, we said: "In arriving at this conclusion it was not done merely because the parties were related. Consideration, however, must be given to such relationship. * * * The relationship is merely a circumstance to be considered with other facts and instances." So while the relationship may be closely scrutinized and although it may be considered as a circumstance tending to establish fraud, nevertheless, other evidence of the fraud must be introduced before such relationship in and of itself can be considered as establishing fraud. It is the rule that transactions between relatives made in good faith and without any actual or constructive fraud on the part of the grantee are allowed to stand. Thompson v. Zuckmayer, 94 N. W. 476; Clark v. Clark, 209 Iowa 1179, 229 N. W. 816; Grant v. Cherry, 199 Iowa 164, 201 N. W. 588; Carlisle v. Milliman, 199 Iowa 949, 203 N. W. 268; Cover v. Wyland, 205 Iowa 915, 218 N. W. 915; Aldrich v. Van Hemert, 205 Iowa 460, 218 N. W. 311; Crenshaw v. Halvorson, 183

Iowa 148, 165 N. W. 360; Keosauqua State Bank v. Hartman, 184 Iowa 961, 169 N. W. 339; State Bank v. Wolford, 178 Iowa 89, 159 N. W. 572. · In Thompson v. Zuckmayer, 94 N. W. 476, 477, we said:

"Transactions between members of a family or others in close confidential relations will be scrutinized closely, but the law gives the relative or friend the same right to protect himself in the collection of a claim, *and the same* right to purchase property, which is enjoyed by a stranger, and to set aside such a transaction the burden remains upon the party alleging fraud to prove it. It is shown that Albert Zuckmayer was indebted to intervenor in quite a large amount, growing out of various dealings between them, and the land conveyed was taken with the burden of a mortgage. We see no good reason for holding that intervenor, in receiving the deed, acted fraudulently. He apparently paid full value for the land, and his acts, so far as disclosed by the record, are entirely consistent with good faith on his part."

In Clark v. Clark, 209 Iowa 1179, 229 N. W. 816, we said:

"It is a well established rule in this state that a debtor is entitled to prefer any one of his creditors by payment of the debt, or by conveying property to him in satisfaction of the debt, though it be to the disadvantage of other creditors."

And in Carlisle v. Milliman, 199 Iowa 949, 203 N. W. 268, we said:

"The wife is certainly entitled to as much consideration as other creditors would be in the securing or payment of debts due from her husband."

In practically all of the cases relied on by appellee there was evidence tending to show that the grantee had actual or constructive knowledge of the insolvent condition of the grantor, and that the deed was given without consideration or that it was grossly inadequate. The facts in this class of cases are different in nearly every case, and each case must therefore be decided upon its own peculiar facts. In this case the evidence by which plaintiff attempts to establish knowledge of fraud and want of consideration on the part of the grantee, rests mainly in the testimony of the defendant Gladys Hennings, who was made a witness by plaintiff. Plaintiff attempted

to do this by cross-examining his own witness. She testified that she knew nothing of her mother's financial circumstances or insolvency at the time the deed in question was executed, or any other time, and that she paid her mother $500 in cash for the land at or about the time she received the deed. Although it is claimed that her testimony showed some minor inconsistencies, on the whole it failed to show any knowledge of fraud on her part, or want of consideration. Appellee contends that because Gladys Hennings was not corroborated as to the payment of the $500, that her testimony should not be believed. It must be remembered, however, that as she was put upon the witness stand by the plaintiff, she thereby became his witness, and he cannot complain that she was not telling the truth, when her testimony is otherwise uncontradicted. Further corroboration was unnecessary. It may be that the credit statements made to the bank by her mother, Mrs. Coon, might not have been entirely true as to the real estate listed, but the record shows that the bank relied mainly upon the personal property so listed. The defendant Mrs. Hennings, however, never saw these credit statements and knew nothing of their contents. The credit statements given to the bank in July, 1930, and again in July, 1931, both show that the exempt personal property listed had a valuation of more than double the amount necessary to pay their liabilities. The record shows that considerable personal property was conveyed to some of the parents' sons in December, 1931, long after the execution of this deed. The indebtedness owing to the bank, of which the trustee was vice president, was only $650, and while the schedule of liabilities filed in the bankruptcy proceedings show a total indebtedness of $1,362.60, the only claim proved and allowed was the bank's claim amounting to $617.

Without setting out the evidence in detail, it is sufficient to say that her evidence fairly shows that she paid a consideration of $500 for the land in question; that she knew nothing of any fraudulent intent on the part of her mother at the time the deed was executed, or thereafter, and that she knew nothing of any insolvent condition of her mother. A further statement of the evidence in detail would serve no useful purpose.

The defendant Lillie Coon was examined in the bankruptcy proceedings and the plaintiff offered in evidence a transcript of her testimony in that proceeding. This was objected to as incompetent and not binding upon the defendant Gladys Hennings. It is true

that this testimony shows some inconsistencies so far as Mrs. Coon is concerned, and that the credit statements did not list the debts which she actually owed to others. It is also claimed that this testimony shows she never gave Mrs. Hennings a receipt for the $500. Notwithstanding this fact, Mrs. Coon also testified in the same examination that she did give Mrs. Hennings some kind of a receipt. She may have been confused by the cross-examination of plaintiff's counsel, but the fact remains that Mrs. Hennings is corroborated by the production of the receipt itself which was offered in evidence.

It is the general rule that affirmative, wholly uncontradicted and positive testimony of a defendant, even when given on her own behalf cannot be held to have proven the negative. Hawkins v. VerMeulen, 211 Iowa 1279, 231 N. W. 361; Bihlmeier v. Budzine, 201 Iowa 398, 402, 205 N. W. 763; Wilson v. Prettyman, 195 Iowa 598, loc. cit. 606, 607, 192 N. W. 413. In the case of Bihlmeier v. Budzine, 201 Iowa 398, 402, 205 N. W. 763, we said:

"The appellee, having tendered him to the court, as a witness, vouched for his competency, credibility, and truthfulness. Of course, appellee was entitled to the benefit of any conflict, inconsistency, or incongruity which might be found in Budzine's testimony, and he was not precluded from calling other witnesses to contradict Budzine if said witnesses could be produced, but Budzine's testimony, except for any inconsistencies or incongruities which there may be therein, stands uncontradicted, and therefore the appellee cannot be heard to claim that he is unworthy of belief."

Where the plaintiff makes the defendant his own witness, he vouches for his truthfulness, and to ask the court to consider the testimony of his own witness unworthy of belief, in the absence of other evidence to the contrary would violate all rules of evidence.

One of the circumstances relied upon by plaintiff in attempting to overcome the credibility of Mrs. Hennings' testimony is that they were poor, had been working and living on a farm, and that it was highly improbable that she and her husband could save $500 out of their earnings up to that time. This is not improbable under the facts shown in this case, and even though it might appear so, it cannot be overcome by the positive evidence that they did save money and that their joint savings were placed together and kept in a trunk. We see nothing so highly improbable in that two married people saved $500 in several years time, as to warrant the court in

finding that it proves the contrary. As the testimony of Gladys Hennings was not contradicted, it must be considered an established fact.

It is also contended that the consideration alleged to have been given for the land in question was so inadequate as to require the cancellation of the deed. It is the general rule of law that inadequacy of consideration, even though proven, is not sufficient to show fraud or want of good faith on the part of the purchaser, and, if the real estate is purchased in good faith and without fraud upon the part of the grantee, a good title passes. Urdangen & Greenberg Bros. v. Doner, 122 Iowa 533, 98 N. W. 317; Hogeboom v. Milliman, 202 Iowa 817, 211 N. W. 396; Mulvaney v. Buckley, 190 Iowa 1119, 181 N. W. 395; Doxsee v. Waddick, 122 Iowa 599, 98 N. W. 483; Cherokee Auto Co. v. Stratton, 210 Iowa 1236, 232 N. W. 646; Commercial Sav. Bank v. McLaughlin, 203 Iowa 1368, 214 N. W. 542.

Testimony was offered on both sides tending to show the value of the real estate. It is rough, unimproved, unbroken, and irregular ridge land; is not adjacent to any paved or gravel road, and access thereto is by a dirt road. Plaintiff offered two witnesses who placed the value of the land at $25 to $30 an acre. Neither one of these witnesses have shown themselves competent to testify as to land values at that time. The defendant Gladys Hennings also offered the evidence of two witnesses, one of whom has been in the real estate business in that community for over 25 years. He testified the land is not good for anything except the timber; that about 20 acres could be farmed, and another 20 could be used as pasture. There is no particular income from this land aside from cutting timber. He testified the land was worth about $10 or $12 an acre, and that it is quite rough. Another witness for defendant, a neighbor owning adjoining land, said the land had no particular value at that time, and was not worth over $500; that the land was not worth anything, and that he would not pay the taxes on it; that he had an 80-acre tract in that community clear, which he would sell for $500. From the testimony introduced on this branch of the case, we believe it is fair to say that the particular land in question at the time the deed was executed in April, 1931, or at any time within several years before and after that time, was not worth much more than $500. We find nothing in the evidence to show that the consideration paid was so inadequate as to justify a cancellation of the deed on that ground.

From the evidence introduced in this case, it is our conclusion that the plaintiff has failed to show either actual or constructive fraud on the part of the defendant Gladys Hennings, or that the consideration paid was so inadequate as to warrant a setting aside of the deed.

It is therefore our conclusion that the lower court erred in canceling the deed and the case is hereby reversed and remanded with instruction to enter a decree in harmony herewith.—Reversed and remanded.

CLAUSSEN, C. J., and ANDERSON, STEVENS, MITCHELL, KINDIG, and EVANS, JJ., concur.