S. HAMILL & CO., Appellants, v. JEOFFREY AUGUSTINE *et al.*, Appellees.

Fraud: TRANSACTIONS BETWEEN HUSBAND AND WIFE. An insolvent husband cannot by procuring a loan of money to be made upon his wife's obligation, and conducting business therewith in her name, protect the results of his industry and skill from the claims of his creditors.

*Appeal from Lee District Court.*—HON. J. M. CASEY, Judge.

THURSDAY, OCTOBER 23, 1890.

ACTION in equity to subject a sum of money due from the defendant railroad company to the payment of certain unsatisfied judgments held by appellants against the defendant, Jeoffrey Augustine. A decree was entered dismissing plaintiffs' petition, from which they appeal.

*James C. Davis* and *Parson & Dolan*, for appellants.

*Gibson Browne*, for appellee, Augustine, *et ux.*

*Palmer Trimble*, for appellee, St. Louis, Keokuk & Northwestern Railroad Company.

GIVEN, J.—I. No question is made as to the indebtedness of the railroad company, nor of Jeoffrey Augustine, to appellants upon the judgments set out. The sole contention is whether the indebtedness of the

company is to Mr. Augustine, or to his wife, Kate
Augustine.   The indebtedness is upon a contract made
with Mr. Sawyer, agent of the company, for boarding
furnished on the company's boarding-cars to its labor-
ers.   The contract was made, and the business of fur-
nishing boarding carried on, in the name of Mrs.
Augustine, but appellants contend that Jeoffrey Augus-
tine was the real party to the contract and business, and
that his wife's name was used in fraud of his creditors.
Prior to the making of the contract, Mr. Augustine had
failed in business, and, at the time it was made, was
without money, property or credit, and indebted upon
judgments, and otherwise.   Mrs. Augustine was also
without means, but it is claimed had credit with mer-
chants of Keokuk, where she resided, and that upon
this credit she was able to carry on the business.   Mrs.
Augustine testifies that she knew her husband was in
debt, that there was a judgment against him, and that,
if he had any property or did business in his own name,
they could get out an execution.   Being without means,
Mr. Augustine solicited a loan of fifty dollars from Mr.
Grill, which he made after seeing Mrs. Augustine, and
in her name.   This loan was paid out of the earnings.
The board was furnished on the cars at points distant
from Keokuk, and the business was conducted by Mr.
Augustine, he hiring help, purchasing supplies along
the line, and doing all other things necessary to the
management of the business.   Mrs. Augustine was not
at any time with the cars, and knew nothing as to the
business out on the line, except as reported to her by
her husband, who she says was serving without any
agreement as to compensation.   All that she did towards
the business was to make some comforts and pillow-
slips for use on the cars, and to make some of the
arrangements for supplies at Keokuk.

"Transactions between husband and wife, to the
prejudice of the creditors are to be scanned closely, and
their *bona fides* must be clearly established."   Wait,
Fraud. Conv., sec. 300 ; *Fisher v. Herron,* 34 N. W.
Rep. 365.   In *Seitz v. Mitchell,* 94 U. S. 582, it is said :

"Purchases of either real or personal property made by the wife of an insolvent debtor during coverture are justly regarded with suspicion, unless it clearly appears that the consideration was paid out of her separate estate. Such is the community of interest between husband and wife, such purchases are so often made a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors, and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and wife there is, and there should be, a presumption against her which she must overcome by affirmative proof." In *Hamilton v. Lightner*, 53 Iowa, 470, the business was carried on in the wife's name, managed by the husband. The property was claimed to be exempt from his debts on the ground that he loaned his wife the money originally invested. The court says: "We think the law will not permit the husband, in this manner, to bestow all the accumulations of his industry and success in business upon his wife, so as to defeat his creditors. He still remains the head of the family, the manager of his business, and the person who, in fact, acquired the property. The device of making the wife debtor for the money loaned by the husband, and upon this transaction basing her claim of title to the property, has been often resorted to for the purpose of concealing property from creditors. If courts were to hold it sufficient for the purpose intended, there would be nothing in the way of a debtor converting his property into money, and placing it beyond the reach of his creditors, while enjoying the income therefrom." In *Keeney v. Good*, 21 Pa. St. 349, 355, it is said that an arrangement to buy property on the wife's credit, and have it paid for by the husband as her agent, is too unsubstantial, and too easily shammed, to be at all satisfactory. "All these things can be done by mere words, and these are but breath." In *In re Eldred*, 3 N. B. R. 256, it is said: "When a man is in embarrassed circumstances, and insolvent, he cannot

make use of his wife, directly or indirectly, to cover up any of his property, or any of his earnings, or his skill. So far as she gets property of her own, independent of him, she is to be protected ; but he cannot make use of her as an instrument to gather about her his means, skill or labor, or anything that is connected with him. Thus, a man has no right to go to his wife and say, 'This is a good bargain. Make this purchase. Give your notes for this property, that property, or the other,'—and make the purchase, and then escape the responsibility of the transaction, so far as he is a debtor, if there is nothing proceeds from his wife as a consideration of the purchase. That is his transaction, the result of his skill and judgment, and his creditors are entitled to it, and he cannot, in that way, cover up the interest which he may have in that property, which is the fruit of his skill and his judgment, from his creditors. If, on the other hand, there is a consideration proceeding from his wife, belonging to her, money or property with which he is unconnected, then she should be protected in the property."

This contract and business was out of the line of anything theretofore pursued by Mrs. Augustine, and such as she was not circumstanced to manage and control. She gives as a reason for intrusting the business to her husband that he was strong and able-bodied, and that she could not go down and do it herself, because she had to remain at home with her child. It is evident that her name was used because of the insolvency of her husband. The money in question is the result of his industry, skill and judgment in the management of the business. We think it is not true, as contended, that it was her credit that furnished the means of carrying on the business. Persons extending credit for supplies say that they would not have done so to the husband ; they do not say that they would have given credit to Mrs. Augustine without some other assurance than her ability to pay. One witness says his firm "afforded Mrs. Augustine credit, as we had the right to

have the railroad company pay our bills." Another says: "It was by virtue of this contract with the railroad company that I gave Mrs. Augustine credit. * * * I had the right to put my bills in at the railroad office where they would be paid. I did not furnish her any provisions, until I saw the railroad people." Another states: "It was on the faith of the railroad contract that I gave her credit." The credit was extended upon assurances from the railroad company, rather than to either of the Augustines. We are satisfied from the testimony that Jeoffrey Augustine was the real party to the contract, and in the business, and that the name of his wife was used to cover up whatever might be accumulated by the enterprise, from his creditors. The indebtedness of the railroad company is the result of his industry, skill and judgment in the management of the business. Our conclusion is that the decree of the district court should be reversed, and decree entered as prayed in the plaintiffs' petition. REVERSED.