THE LANE-MOORE LUMBER CO. and THE CITIZENS' LUM-
BER CO., Appellants, v. S. C. BRADFORD ET AL.,
Appellees.

**Fraudulent conveyances:** TRANSACTIONS BETWEEN HUSBAND AND WIFE:
EVIDENCE. A debtor will not be permitted to use the name ·of
his wife as a mere cover to conceal his own property; but in
the instant case, involving the rights of a third party, the evi-
dence is reviewed and held to show that the arrangement by
which the wife acquired certain property was not a fraud upon
the husband's pre-existing creditors, nor a sham as between hus-
band and wife, and that the wife's right to the property could
not be subjected to the payment of the husband's pre-existing
debts.

**Same:** RIGHTS OF HUSBAND'S CREDITORS. The evidence in this action
also disclosed that the husband transferred certain notes and
mortgages to a creditor as collateral, and that subsequently his
mortgagor transferred the property to him in satisfaction of the
mortgage and he conveyed the same to his creditor as further
collateral security. Thereafter it was agreed that the wife should
convey to such creditor certain of her property as collateral and
receive therefor from the creditor the notes and mortgages pre-
viously transferred to it by her husband, and a quitclaim deed
to the property covered thereby, which was done. The property
conveyed by the wife to the creditor was subject to a mortgage
which was released by the mortgagee, and the notes and mort-
gages which the wife received from the creditor were accepted
by him in lieu thereof. *Held,* that the wife did not acquire an
absolute title by the quitclaim deed from the husband's creditor
but that the same amounted to a mortgage only, and that as the
conveyance of her land to the creditor was as security only for
the debt of her husband she was entitled to hold the quitclaim
deed as security against loss by reason of her conveyance to se-
cure the husband's debt, and that the husband's creditors were
entitled, subject to her right, to subject his equitable interest
in the property to the satisfaction of their claims.

**Taxation of costs:** DISCRETION. Where the court, in an action to
cancel conveyances and to subject property to the lien of a judg-
ment, granted the plaintiff partial relief, there was no reversible

error in taxing all the costs against the defendant, although the court in its discretion might have apportioned the costs.

*Appeal from Buena Vista District Court.*—HON. D. F. COYLE, Judge.

WEDNESDAY, JUNE 15, 1910.

CREDITOR's bill to set aside conveyance and to subject property to the lien of plaintiffs' judgments. There was a decree granting partial relief and denying other relief. Plaintiffs appeal. Defendants also have taken a cross-appeal. *Affirmed* on both appeals.

*Edson & Moulton,* for appellants.

*James De Land* and *Faville & Whitney,* for appellees.

EVANS, J.—Defendants S. C. Bradford and Catherine Bradford are husband and wife. The defendants Brenton and the Bank of Dallas Center may be deemed as identical for the purpose of this case; Brenton being one of the owners of the bank. The business involved in this inquiry was transacted for the bank by Brenton. For convenience of discussion of this feature of the case we shall use Brenton's name alone. It is urged in argument by defendants' counsel that there is not sufficient evidence of the insolvency of S. C. Bradford to sustain a creditor's bill. We dispose of this contention first as preliminary to any further statement of the case. To our minds such contention is too heroic. The insolvency of Bradford is a mountain peak in the case, and is visible from every point. Our discussion of the case will therefore be based upon the assumption of the insolvency of Bradford. Plaintiffs are judgment creditors of S. C. Bradford alone, and their claims accrued long prior to any of the transactions here

considered. The record in the case covers an inquiry into a large number of transactions, and the case is exceedingly complicated in its details. The real controversy in the case arises over questions of fact, and this not so much over any conflict in the evidence as over the ultimate conclusions of fact to be drawn from the evidence. The case in all of its complications has been set forth with commendable clearness in the arguments of respective counsel, and we have therefore had little difficulty in getting a clear comprehension of the various branches of the case. It would be impossible, however, for us to enter into a satisfactory discussion of the facts in the case without extending our opinion to an undue length, and we shall do little more than to state our conclusions upon the different features of the case which have been presented for our consideration.

I. Some time in 1907 certain negotiations were had between the defendants, the Bradfords, and Brenton. Bradford was at that time insolvent and had been so for some time prior thereto. Prior to this time he had been the owner of a farm, known in the record as "Grass Lake Farm," consisting of one thousand two hundred acres. He had held a contract for its purchase for some years from Lot Thomas. The contract matured in 1905, and Bradford was unable to perform. An arrangement was entered into, however, whereby Thomas conveyed to Mrs. Bradford, and mortgages for the purchase money were executed by her as the owner thereof. The interest on these mortgages was allowed to become delinquent, and a foreclosure sale thereof was had, and the time of redemption had nearly expired when an arrangement was entered into with Brenton whereby he negotiated mortgage loans on such property of $60,000. Later a $10,000 mortgage was executed on the same property as a third mortgage. The legal title to this property continued in Mrs. Bradford

*1. FRAUDULENT CONVEYANCES: transactions between husband and wife: evidence.*

up to the time of the beginning of this suit, when she conveyed it back to her husband subject to the mortgages, and disclaimed any beneficiary interest therein.   Some time following the negotiation of the mortgage loans above referred to, some negotiations were had between the same parties with reference to future transactions in the purchase and sale of real estate.   Bradford had some knowledge and experience along that line.   He desired to purchase real estate, but had neither funds nor credit.   Brenton refused to loan funds to Bradford for that purpose because of his insolvency, but signified his willingness to make proper loans to Mrs. Bradford from time to time as occasion might arise.   The arrangement was verbal and indefinite and informal, but it was assented to by Mrs. Bradford and her husband.   Pursuant thereto, many tracts of real estate were purchased mostly by executory contract drawn in the name of Mrs. Bradford as purchaser. The money necessary for the performance of these contracts was loaned by Brenton upon notes executed by Mrs. Bradford and secured in all cases by an assignment of the contract to him or by a conveyance of the property. The actual business relating to such purchases was transacted by Bradford as purported agent for his wife, acting upon the most general authority as such agent.   The judgment and experience of the husband furnished the main reliance of the wife in all of such transactions. Sales of many tracts were made largely in the form of trades for stocks of merchandise.   For the purpose of handling these stocks of merchandise, a corporation was organized with a capital of $10,000.   The necessary working capital was advanced by Brenton, $8,300 worth of the stock was issued to Mrs. Bradford, and by her pledged to Brenton as collateral for moneys advanced.   Bradford contributed no property to any of these enterprises, except that he contributed about $700 in value to the capital stock of the corporation, for which stock was issued to him

and to one of his creditors; and except, further, that he transferred to his wife a certain contract or option which he held for four hundred and sixty-one acres of land. This contract was entirely executory, and nothing had been paid thereon, nor had there been any increase in the value of the land at the time it was transferred to his wife.

At the time of the trial Mrs. Bradford purported to be the equitable owner of several tracts of land purchased in pursuance of the arrangement above stated, all of which, however, were incumbered by her obligations to pay the purchase money under the contracts of purchase, and further incumbered by her obligations to Brenton for moneys advanced in partial performance of the contracts. At the time of the trial Brenton held her personal notes for more than $20,000 independent of the notes which she had executed in the negotiation of loans upon the Grass Lake farm. Whether the enterprise so entered into had in it any final margin of profit over and above the current expenditures that had already been expended does not appear from the testimony. The contention of the plaintiffs is that Bradford is the real owner, and that the use of the name of his wife was a mere sham to cover the property from his creditors, and reliance is placed upon those cases wherein the courts have frequently held that a debtor will not be permitted to use the name of his wife as a mere cover for concealing his own property. *Hamill v. Augustine*, 81 Iowa, 302. We have no disposition to relax such rule; but the arrangement under consideration here was not simply an arrangement between husband and wife. It involved a third party in its inception. Brenton was clearly within his rights in refusing to advance money to an insolvent, and in refusing to accept mortgages on real estate from such insolvent. He was within his legal rights in entering into such negotiations with the wife of the insolvent. It necessarily follows that she could legally incur the liability and acquire the property rights which

should arise out of such an arrangement. The arrangement was not a present fraud upon pre-existing creditors. Nor can we characterize the transaction as a sham as between husband and wife in view of the fact that the wife could borrow the money from Brenton, and her husband could not. It is true she had no property of her own upon which to base her credit, but she was not insolvent, and Brenton could deal with her without the peril of complication arising from judgment liens or other claims such as existed against her husband. Our conclusion is that as to all the newly acquired property for all of which she obligated herself personally the plaintiffs as pre-existing judgment creditors have no ground of complaint. *Shircliffe v. Casebeer,* 122 Iowa, 618; *Foreman v. Bank,* 128 Iowa, 661; *King v. Wells,* 106 Iowa, 649.

II. For some years prior to 1907 defendant S. C. Bradford was indebted to the German Savings Bank in amounts varying between $10,000 and $20,000. He be-

2. SAME: rights of husband's creditors.

came the owner of certain notes and mortgage for $10,000, which are referred to in the record as the Stevens and Herrick mortgage. He transferred these notes and mortgage to the German Savings Bank as collateral for his debt. The mortgage covered certain town lots in Storm Lake. Later Stevens and Herrick conveyed the lots to Bradford, and, as between them, the conveyance was intended to be in satisfaction of the mortgage as a part of the consideration. Stevens and Herrick executed and delivered to him a deed, leaving the name of the grantee therein blank. For the purpose of improving his collateral security with the German Savings Bank he conveyed the lots to the German Savings Bank. The mutual intent of that conveyance was that it should be held by the savings bank as the equivalent of the mortgage and as collateral security for the debt above mentioned. The form of the conveyance consisted in inserting the name of one Voss, an officer of the bank,

as grantee in the blank space of the deed which he had received from Stevens and Herrick. Later the bank became dissatisfied with its security. Mrs. Bradford was the owner, under an executory contract, of a certain farm in Dickinson County. Negotiations were entered into for a substitution of collateral security. The substance of such negotiations was that Mrs. Bradford should convey the Dickinson County farm to the savings bank as collateral security for her husband's debt, and that the savings bank should transfer to her the previous security held by it, viz., the Stevens and Herrick notes and mortgage, and another mortgage on other town lots. In order that Mrs. Bradford could convey the Dickinson County land to the savings bank, she had to negotiate with Brenton, who held the contract for the land as security for his advancements. The negotiations as entered into and carried out were that Brenton advanced sufficient money to be paid on the contract to enable Mrs. Bradford to obtain a deed from the seller. A certain mortgage loan was negotiated thereon, and the land was then conveyed by Mrs. Bradford to the savings bank, subject thereto. Brenton relinquished his claim therein, and, in lieu thereof, received from Mrs. Bradford the Stevens and Herrick notes and mortgage which she received from the savings bank. The transfer by the savings bank to Mrs. Bradford of its previous securities included not only a formal transfer of the notes and mortgage, but a quitclaim deed of the lots from Voss to Mrs. Bradford. Under this arrangement Mrs. Bradford claims to be the equitable owner of the lots in question, subject to the claim of Brenton thereon as security for her indebtedness to him.

On behalf of plaintiffs, it is contended that the debts secured by the Stevens and Herrick mortgage had been paid as a result of the sale of the lots, and that the mortgage was therefore dead and that Mrs. Bradford took nothing. So far as the mere form of the various transac-

tions is concerned, there is legal ground for plaintiffs' contention.  But equity deals with the substance rather than with the form of the transaction, and there is little trouble at this point in ascertaining the substance and intent of these successive transactions, and in determining the equitable rights of the parties.  As between Stevens and Herrick on the one hand and S. C. Bradford on the other, the debt should be deemed paid.  But, as to the German Savings Bank, which held the paper, it was not paid, nor was the personal liability of Stevens and Herrick extinguished.  Inasmuch, therefore, as the paper had life in the hands of the savings bank, we see no reason why it might not be transferred to Mrs. Bradford in pursuance of the proposed exchange of securities already noted.  By such transfer her rights are equal to those of the savings bank, and no more.  The trial court held that she did not thereby acquire an absolute title to the lots by her quitclaim deed, but that such deed was only the equivalent of the mortgage.  It also held that inasmuch as her conveyance of the Dickinson County farm was a conveyance as security only for the debt of her husband, she was entitled to hold her mortgage and deed of the lots in question only as indemnity against loss by reason of the conveyance which she had made to secure her husband's debt, and that, subject to such right, her husband was the equitable owner of the lots.  Both parties complain of this holding.  The defendants' claim at this point has already been indicated.  The plaintiffs' complaint has been partly indicated.

Plaintiffs complain, further, that the court should have fixed a limit to the interest or claim of Mrs. Bradford to these lots, and that such limit should have been $2,000.  The argument is that the farm conveyed by her was worth only $8,000 when it was conveyed, and that it was incumbered by mortgage for $5,000, leaving her an equity of $3,000, and that she has since had a benefit of

$1,000 arising in some manner out of the sale of property. It is argued, therefore, that $2,000 will be her utmost loss if her land is finally appropriated to the payment of her husband's debt. The fallacy of this argument is that her ultimate loss is to be measured, not by value of the land as it was when it was conveyed, but by its value as it shall be when it is appropriated. The land may increase in value. If the land shall be finally appropriated to the payment of the debt and if at that time it should be worth $20,000, her right to indemnity could not be confined to the mere value of her original equity at the time of the conveyance, but must be measured by the larger value. It is our conclusion that the trial court was right in its holding at this point. What we have already said applies equally to the controversy over the $2,300 mortgage which covers certain other sixteen lots. The legal title to these lots, however, is conceded to be in S. C. Bradford.

III. Defendants complain on their appeal because the trial court taxed all costs to them. As we have already seen, the trial court awarded to the plaintiffs partial relief. It was sufficient to carry costs unless the case was a proper one for an apportionment of costs. Under the record in this case there was no hard and fast rule for the taxation of costs applicable. The court had some latitude of discretion. If an apportionment had been ordered we could have found no fault with such order. Nor can we say that there was an abuse of discretion in allowing the costs to follow the partial relief granted. We think the decree is right in all its parts, and it is accordingly affirmed on both appeals. *Affirmed.*

3. TAXATION OF COSTS: discretion.