Ralph Tullis et al., Appellants, v. Frank Tullis et al., Appellees.

No. 46566.

December 12, 1944.

E. P. Murray, of LeMars, for appellants.

Roseberry & Pitts, of LeMars, for appellees.

Wennerstrum, J.—The proceeding that is before us for review has arisen by reason of an action brought in equity under sections 11815–11818 of the 1939 Code of Iowa. The

action brought by the plaintiffs is commonly known as a creditor's bill. Plaintiffs sought to subject property now claimed to be owned by Rose Tullis, wife of Frank Tullis, to the payment of certain judgments obtained by the plaintiffs against Frank Tullis. The trial court held that the property levied upon was the absolute property of Rose Tullis and not subject to the judgments held by the plaintiffs. The plaintiffs have appealed.

The factual situation disclosed by the record is, in part, as follows:

Frank Tullis was, for a number of years, the guardian of the property of Ralph Tullis and Arthur L. Tullis, the appellants in this action. At the time Frank Tullis was acting as guardian he made an unauthorized loan of the funds of the guardianship which he, as guardian, was unable to collect. When the appellants, the wards in the guardianship proceeding, became of age, Frank Tullis was unable or failed to account to his wards for the money and property due them. Thereafter an action was commenced by the appellants to recover judgments against Frank Tullis for the amount due them. A judgment was entered in the District Court of Plymouth County, Iowa, on February 28, 1939, against Frank Tullis and in favor of Ralph Tullis in the amount of $1,043.97. A judgment was also entered in favor of Arthur L. Tullis and against Frank Tullis in the amount of $1,626.38. An effort was made to collect on these judgments from Frank Tullis but without success. The appellants then commenced the proceeding now before us on appeal and sought to subject property on the farm which Frank Tullis was occupying to the payment of the judgments. Rose Tullis claimed to be the owner of the personal property on the farm which she was renting.

On August 2, 1935, Frank Tullis gave a bill of sale to Rose Tullis covering all household goods, all horses, all cattle, and all farming implements owned by him. The instrument disclosed a consideration of $1,500. At the time the bill of sale was given Rose Tullis and her husband were living with a daughter. In connection with the payment of the consideration as set out in the bill of sale, Rose Tullis testified:

"A. I had got money several times and put it into the property and finally it got so we was down and out. We had to do something, so it was I told him to put it in my name and I would get some, borrow some more money from my folks and go ahead and farm. Q. You said you would borrow some more money. Was that borrowed after or before the bill of sale? A. After and before. Q. Did that go to make up the $1,500.00? A. Yes. Q. And the total was $1,500.00 altogether? A. That is right. Prior to that time my husband was running the farm and had this property just like an ordinary farmer. The loan I made my husband was to get going along and get started. He has never paid that back. Q. Never paid any back? A. No, that was the reason I had him turn it over to me, because I owned a big share. I told him to turn it over and I would borrow more money and we would go ahead and farm. Q. Did you borrow any more money than the $1,500.00? A. I borrowed some in 1936 and borrowed some in 1937. I borrowed $100.00 in the fall of 1936 from my brother. He was guardian of the estate—borrowed $100.00 in the spring from my brother also to buy feed for our stock. I borrowed—let's see it was in 1937, $360.00 from the FHA."

It was also disclosed by the record that Frank Tullis did most, if not all, of the general farm work on the farm rented by Rose Tullis. He owns one share of stock in the Plymouth Co-Operative Oil Company and also a share of stock in the Sioux Center Creamery Company. Rose Tullis testified that her husband did not seem to be making any headway and so it was decided to change the property and put it in her name and she would carry on the business operations. She further testified that her husband wanted to quit and go to town and the only way she could talk him out of it was to change the title to the property and put it in her name. She also stated that they had a crippled son and that she did not want to rear the boy in town and thought it would be better to keep him on a farm. Rose Tullis has rented the farms, operated by her, aided by her husband, since she obtained the bill of sale. She also testified she did not consider this bill of sale a mortgage and figured it was a complete turnover of the property to her.

At the time of the levy made in the proceeding brought in the district court by the appellants Rose Tullis held title to or claimed to hold title to one hundred twenty-five young pigs, eighteen sows, four pigs, one stag, nineteen head of cattle, twenty-four small lambs, approximately one thousand bushels of corn in a crib, and also about five hundred bushels of oats in the granary. Rose Tullis also claimed at this time the ownership of one team of horses and apparently all the farm implements. Frank Tullis testified that at the time the bill of sale was given he was discouraged; that his wife got money from home, which was the $1,500 referred to in the bill of sale. He also testified that he did work on the farm but that it was his wife's ability that made the money. In connection with the unauthorized loan of the guardianship funds, Frank Tullis testified that he tried to pay the appellants as long as he could and then "went broke."

Frank Tullis and Rose Tullis were called as witnesses for the appellants. With the exception of a small portion of the testimony of Frank Tullis, who testified briefly as a witness for the appellees, all the testimony presented in these proceedings was offered on behalf of the appellants. Both Rose and Frank Tullis testified, as witnesses for appellants, relative to the consideration paid at the time of the giving of the bill of sale and the circumstances of the transaction.

I. We should give initial consideration to the testimony of Rose and Frank Tullis and conclude what weight it should receive in connection with appellants' claim that the trial court erred in its ruling and holding.

It is stated in the case of Harvey v. Phillips, 193 Iowa 231, 233, 186 N. W. 910, 911, in commenting upon a situation somewhat similar to that presented in the proceedings here before us for review, as follows:

"By placing the defendants on the stand as witnesses, to a certain extent he vouches for their truthfulness, and he may not impeach them, although, of course, he may contradict, and may rely upon the proper inferences to be drawn from the circumstances testified to by them. Under such circumstances, we may not construe their evidence only as it is against the defendants,

but must construe it as well in their favor. In other words, the evidence must be taken all together.''

In the case of Pike v. Coon, 217 Iowa 1068, 1074, 252 N. W. 888, 891, we stated:

''It is the general rule that affirmative, wholly uncontradicted and positive testimony of a defendant, even when given on her own behalf cannot be held to have proven the negative. Hawkins v. VerMeulen, 211 Iowa 1279, 231 N. W. 361; Bihlmeier v. Budzine, 201 Iowa 398, 402, 205 N. W. 763; Wilson v. Prettyman, 195 Iowa 598, loc. cit. 606, 607, 192 N. W. 413. In the case of Bihlmeier v. Budzine, 201 Iowa 398, 402, 205 N. W. 763, we said:

'' 'The appellee, having tendered him to the court,. as a witness, vouched for his competency, credibility, and truthfulness. Of course, appellee was entitled to the benefit of any conflict, inconsistency, or incongruity which might be found in Budzine's testimony, and he was not precluded from calling other witnesses to contradict Budzine if said witnesses could be produced, but Budzine's testimony, except for any inconsistencies or incongruities which there may be therein, stands uncontradicted, and· therefore the appellee cannot be heard to claim that he is unworthy of belief.'

''Where the plaintiff makes the defendant his own witness, he vouches for his truthfulness, and to ask the court to consider the testimony of his own witness unworthy of belief, in the absence of other evidence to the contrary would violate all rules of evidence.''

■ II. In the instant case the appellants alleged that Frank Tullis conveyed the property to Rose Tullis and put it in her name under a plan, scheme, and conspiracy whereby the property of Frank Tullis would be placed beyond the reach of his creditors. However, a further statement found in Harvey v. Phillips, supra, 193 Iowa 231, 233, 186 N. W. 910, 911, is here applicable:

''We held, in Schrimper v. Chicago, M. & St. P. R. Co., 115 Iowa 35, 40, and Johnson v. Tyler, 175 Iowa 723, 733, that, to justify a decree setting aside or reforming a deed because

of alleged fraud, the evidence must be clear and satisfactory, and that a mere preponderance is not sufficient; that any other rule would be highly dangerous, and tend to weaken confidence in all titles. It may be that the instant case is not one, strictly speaking, to set aside a deed, and yet that is the effect of it, so far as the defendant Nellie Phillips is concerned; for she is deprived of her title by the finding of the trial court.''

In Hawkins.v. VerMeulen, 211 Iowa 1279, 1284, 231 N. W. 361, 363, we stated, in a proceeding somewhat similar to the one here under consideration, as follows:

''We cannot, on the record, hold that appellant's own testimony, which is without dispute in the record, is so inherently false as to make out a case in favor of her adversary. Mere ground for suspicion does not make a case in favor of a creditor seeking to subject property conveyed to a third party to execution. Mulvaney v. Buckley, 190 Iowa 1119. The evidence in such case, to justify the setting aside of a transfer of property at the suit of a creditor, must be clear, satisfactory, and convincing. Harvey v. Phillips, 193 Iowa 231, and cases therein cited.''

Appellants have referred us to numerous citations of cases relative to actions seeking to set aside claimed fraudulent conveyances. They are, in part, as follows: Hamilton v. Lightner, 53 Iowa 470, 5 N. W. 603; Hamill & Co. v. Augustine, 81 Iowa 302, 46 N. W. 1113; Schnurr v. Miller, 211 Iowa 439, 233 N. W. 699; First Nat. Bk. v. Hartsock, 202 Iowa 603, 210 N. W. 919; Hamill & Co. v. Henry, 69 Iowa 752, 28 N. W. 32. A reference to these various cases and a review of their holdings would be of no particular benefit in our consideration of this appeal. There are certain fundamental rules which have heretofore been laid down and to which we have herein made reference. The facts in the instant case are of such a nature that we feel that these rules and holdings have application to the present litigation. There may be circumstances as disclosed by the record which might be interpreted as indicating a fraudulent intent on the part of Frank Tullis. However, as stated in the case of Hawkins v. VerMeulen, supra, 211 Iowa 1279, 1284, 231 N. W. 361, 363:

"Mere ground for suspicion does not make a case in favor of a creditor seeking to subject property conveyed to a third party to execution."

■ III. The appellants lay particular stress on the marital relationship of Rose Tullis and Frank Tullis. In regard to a somewhat similar situation we said in the case of Pike v. Coon, supra, 217 Iowa 1068, 1072, 252 N. W. 888, 890:

"The facts in this class of cases are different in nearly every case, and each case must therefore be decided upon its own peculiar facts."

It should be kept in mind that the appellants called the appellees, Rose Tullis and Frank Tullis, as their witnesses, and it is out of the interpretation of their testimony that the appellants seek, in the main, to make out their case. We hold that the appellants have failed to substantiate their allegations with that degree of proof which our previous holdings have required, and by reason of this failure we must and do hold that the trial court was correct in its ruling and holding and should be affirmed.—Affirmed.

All Justices concur.