**HARTFORD–CARLISLE SAVINGS BANK, Plaintiff–Appellant,**

v.

**Ronald W. SHIVERS and Beverly Shivers, Defendants–Appellees.**

No. 95–1096.

Court of Appeals of Iowa.

July 26, 1996.

910

Robert M. Benton of Stuyvesant & Benton, Carlisle, for plaintiff-appellant.

Larry J. Handley and Daniel R. Marvin, of Handley & Block, Ankeny, for defendants-appellees.

Heard by SACKETT, C.J., and HABHAB and STREIT, JJ.

HABHAB, Judge.

At issue in this appeal is whether appellant carried its burden to prove the existence of a fraudulent conveyance. The district court held it did not and we affirm.

Larry Shivers had obtained two loans from plaintiff-appellant Hartford–Carlisle Savings Bank to enable him to finance a fifty-fifty crop share farm operation with his cousin defendant-appellee Ron Shivers.[1] The loans were secured by Larry's livestock, farm machinery, and various accounts, contract rights, and payments from state and federal programs.

Larry and Ron farmed on a fifty-fifty crop share basis from 1987 through 1993. They also shared a livestock operation. Larry and his family resided in a home located on Ron's farm.

In March 1994, Larry learned the bank would not be providing him with further financing. Unable to obtain financing to provide his half of the inputs to operate on a fifty-fifty crop share basis, Larry agreed to custom farm for Ron during the 1994 crop year. Ron would provide the land, inputs, and fuel, and Larry would plant the crop. Ron would receive all of the profits and Larry and his family would be allowed to continue to reside in the home and use the buildings on the property. The rental value of the land and buildings was estimated to be $1000 per month.

1. Ron's wife was also named as a defendant in this action.

Larry's financial situation did not improve and the bank commenced a foreclosure action against him. He filed bankruptcy in July 1994. Since Larry did not know when or if the bank would be repossessing his cattle and/or machinery, he was only able to continue to operate Ron's farm operations on a day-to-day basis. Ultimately he was able to harvest Ron's 1994 crop, although he had to use some of Ron's machinery to do so.

The rate Larry charged Ron for the custom farming was based on what he had charged others for the same work. This rate was somewhat less than the average rates shown in an Iowa State University ("ISU") custom farming survey. The rate Ron charged Larry for the use of the house and outbuildings was the same as the rental rate charged by a bank which had previously possessed the property.

On November 2, 1994, the bank filed a petition against Ron and Beverly Shivers. Among other things, the bank claimed it was entitled to a judgment for the value of the custom farm work done by Larry for Ron in 1994. The district court concluded the valuation placed on Larry's services was comparable to the fair rental value of the farm home and outbuildings and was sufficient consideration for the custom farm work he had performed. The court concluded there was insufficient evidence to prove a fraudulent conveyance. The bank has appealed and argues it is entitled to the full value of the custom farm work Larry performed for Ron in 1994 as well as a judgment for the value of cattle Ron retained which the bank claims were part of Larry's share of the cattle.

■ This is an equity action and our review is de novo. See Iowa R.App. P. 4; *Textron Financial Corp. v. Kruger*, 545 N.W.2d 880, 883 (Iowa App.1996). Our courts have repeatedly recognized that while in cases of equity the reviewing court is not bound by the fact findings of the trial court, factual disputes which depend heavily on the credibility of witnesses are best resolved by the trial court which has a better opportunity to evaluate credibility. *Maisel v. Gelhaus*, 416 N.W.2d 81, 86 (Iowa App.1987).

■ A fraudulent conveyance is a transaction by means of which the owner of real or personal property has sought to place land or goods beyond the reach of his creditors or which operates to the prejudice of their legal or equitable rights. *Benson v. Richardson*, 537 N.W.2d 748, 756 (Iowa 1995). The doctrine of fraudulent conveyance advances the principle that a debtor's property constitutes a fund from which the debtor's obligations should be paid and the debtor may not frustrate a creditor's right to obtain satisfaction from the fund. *Id.*

■ A party asserting fraud must establish its existence by clear and convincing evidence. *Id.* When determining whether a transaction constitutes a fraudulent conveyance we look for a number of badges or indica of fraud: inadequacy of consideration; insolvency of the transferor; pendency or threat of third-party creditor litigation; secrecy or concealment; departure from the usual method of business; any reservation of benefit to the transferor; and the retention by the debtor of possession of the property. *Id.* Courts evaluate the circumstances of a transaction as a whole. *See First State Bank, Belmond v. Kalkwarf*, 495 N.W.2d 708, 712 (Iowa 1993). "Mere ground for suspicion does not make a case in favor of a creditor...." *Tullis v. Tullis*, 235 Iowa 428, 434, 16 N.W.2d 623, 626 (1944) (quoting *Hawkins v. Vermeulen*, 211 Iowa 1279, 1284, 231 N.W. 361, 363 (1930)).

■ The bank has fashioned an unusual claim of fraudulent conveyance in this case. It does not argue Larry placed real or personal property beyond the reach of his creditors as in the typical fraudulent conveyance action. Instead, the bank argues Larry entered into a contract with Ron to provide custom farm services and did not receive adequate consideration for the performance of those services. The bank theorizes it had a security interest in all of Larry's contract rights, including this oral agreement to provide custom farming, and it is entitled to recover the value of those services.

Without addressing the preliminary questions of whether the bank actually had a security interest in all of Larry's contract

rights, and whether such a right would extend to the value of the custom farming agreement, we find the bank did not prove the existence of a fraudulent conveyance. We agree with the findings of the district court that the parties had operated a fifty-fifty crop share and cattle operation from 1987 until 1993, and they had to reach a new agreement in 1994 after Larry was denied financing to provide his share of the 1994 crop inputs. Under the new agreement, Ron provided the land and inputs and Larry only performed the labor. In exchange for his labor, Larry was allowed to reside in the home on Ron's farm and use the buildings. The record supports a rental value of $1000 for the home and buildings. We agree with the district court the value of the work performed by Larry was of substantially equal value to the rental value of the home and buildings. Contrary to the bank's arguments, the value of Larry's work should not be totally based on the ISU survey rates. Larry testified he generally charged lower rates to others for similar custom farm work, and he could not provide the fuel or all of the equipment generally associated with the provision of custom farm work and Ron had to provide it.

The bank argues the parties had separate crop and cattle agreements, and the provision of housing was merely consideration for the preexisting cattle agreement and not for the new custom farming arrangement. Both Larry and Ron testified the crop and cattle sharing were part of a "package deal." In March 1994, Larry anticipated the bank would soon be taking his cattle, and he and Ron reached a new agreement which encompassed both the crops and the cattle. The provision of housing and the use of farm buildings was consideration for both Larry's role in raising Ron's crops and caring for the livestock.

The consideration exchanged by Ron and Larry under the new agreement was sub-

stantially equal. Given that Larry did not know until March he would be denied financing, his arrangement with Ron appears to have been a reasonable response for both of them. Ron needed to have a plan in place for someone to put in his crops and oversee his livestock. Larry and his family needed a residence, a place for their cattle, and buildings for Larry's wife's hog operations. The circumstances of this transaction were comparable with the usual circumstances found in a bona fide transaction. *See Textron Financial Corp.*, 545 N.W.2d at 883 (court is to compare circumstances of alleged fraudulent conveyance with circumstances found in a bona fide transaction). Under the circumstances of this case and the adequacy of the consideration for this new arrangement, we can find no fraudulent conveyance.

Larry's cattle were collateral for his loans with the bank. In anticipation of the bank's repossession of the cattle, Larry had been tagging them and taking steps to separately identify his and Ron's livestock. The bank took Larry's cattle in September 1994. The bank claims it took fifty-three head of Larry's cattle and Ron retained sixty-five head.

Larry testified that while he and Ron started out with an equal number of cattle, Larry had fewer cattle at the end because he had to sell some of his sooner than Ron to help his cash flow. There was no evidence to refute this and there is no basis for concluding Ron's retention of twelve more head of cattle was fraudulent.

**AFFIRMED.**