**United States Bankruptcy Appellate Panel**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-6066SI
_____

In re:                                          *
                                                *
Robert Hatcher, Ruth Ann Hatcher,               *
                                                *
     Debtors.                                   *
                                                *
Robert Hatcher, Ruth Ann Hatcher,               *
                                                *
     Debtors - Appellants,            *    Appeal from the United States
                                                *
                                      *    Bankruptcy Court for the
                                                *
          v.                          *    Southern District of Iowa
                                                *
U.S. Trustee,                              *
                                                *
     Trustee - Appellee,                   *
                                                *
Allison Financial Corporation,             *
                                                *
     Creditor - Appellee.                  *


_____

                    Submitted:  February 12, 1998
                         Filed: March 6, 1998
_____


Before WILLIAM A. HILL, SCHERMER, and SCOTT, Bankruptcy
Judges.

_____


WILLIAM A. HILL, Bankruptcy Judge.

The appellants, Robert and Ruth Ann Hatcher ("Hatchers"), appeal from the order of the bankruptcy court[1] dismissing their Chapter 11 case for cause pursuant to the United States Bankruptcy Code ("Code"), 11 U.S.C. § 1112(b). For the following reasons, we affirm the order of the bankruptcy court.

## I. BACKGROUND

The Hatchers are Iowa farmers. Prior to 1994, they owned farmland which was partly encumbered by a mortgage on which they fell delinquent. As a result, approximately one-half of their farmland became the subject of a mortgage foreclosure proceeding. A sheriff's sale was set for January 6, 1994. The Hatchers sought a loan in order to save their property; however, their efforts failed. They then determined to sell their entire property, which consisted of 46 acres of land on which their residence and another building were situated. In preparation for its sale, they platted the land into separate parcels with an aggregate list price of $316,000.00.

Several months prior to the sheriff's sale, the Hatchers located a buyer for their property. The parties agreed upon a sale price of $69,300.00, with an option for the Hatchers to repurchase the property within a specified period of time. The sale collapsed, however, upon the buyer's inability to obtain financing for the transaction. Nevertheless, the Hatchers were able to locate yet another buyer, Allison Financial Corporation ("Allison"), with which they entered into a similar sale agreement.

On January 3, 1994, Allison signed a purchase agreement with the Hatchers to purchase their entire property for

---

[1]The Honorable Russell J. Hill, Chief Judge, United States Bankruptcy Judge for the Southern District of Iowa.

$69,300.00.[2]  The parties' agreement provided the Hatchers with the option to repurchase the property by March 30, 1994. On January 6, 1994, the

---

[2]As the Court of Appeals of Iowa found, "[t]he lower price was due to a variety of factors, including the need to remove an old ethanol plant tower, potential environmental concerns, zoning changes, and the buy-back provision."

Hatchers executed a warranty deed in favor of Allison conveying their entire real estate. The Hatchers did not exercise the repurchase option.

Subsequently, the Hatchers filed suit against Allison in Iowa state district court seeking reformation of the sale agreement by claiming the sale was intended to be a loan transaction, and also seeking damages from Allison and several other defendants for breach of fiduciary duty and for fraudulent misrepresentation. The district court entered judgment against the Hatchers in January 1995. Included among its findings were the following: the Hatchers had attempted to sell various portions of their farmland since at least 1988; Mr. Hatcher himself negotiated the terms of the sale of his property with its first potential buyer, including its sale price, a repurchase option, and the closing date; Mr. Hatcher's real estate agent reduced the sale agreement to writing, explained it to Mr. Hatcher, and also advised him against entering into it; and, when the first deal fell through, the Hatchers expressed to their real estate agent their desire to locate another buyer. Finally, concerning the Hatchers' ultimate sale of their property to Allison, the court found that:

> The terms and conditions of the sale . . . [were] explained fully in the written real estate sales agreements. It was explained orally [as well]. It is without question that [the Hatchers] freely and of their own accord executed a warranty deed in the presence of a notary public transferring title of the real estate to Allison . . . . [The real estate brokers] made no material misrepresentations so as to mislead the Hatchers into selling their land.

The court additionally ruled that the Hatchers failed to prove any breach of fiduciary duties or fraudulent misrepresentation by the defendants. The court concluded by stating that:

4

[The Hatchers'] current status is due to the elusive and unrealistic dream of Robert E. Hatcher. At all times Robert Hatcher maintained a dream or wish that someone with unlimited finances would pay an exorbitant price for his farm. Upon receiving this unreasonable sum, Robert E. Hatcher further fantasizes of paying all his debts and purchasing a different and better farm. This delusion was the reason the [Hatchers] attempted at any cost to purchase additional periods of time to allow Robert E. Hatcher to locate his imaginary buyer. Ultimately, the cost of this fantasy was the [Hatchers'] home.

In a subsequent order entered on February 8, 1995, the district court reaffirmed its earlier findings as to the Hatchers' and Allison's agreement by ruling that, "It is clear that the purchase agreement entered between [the Hatchers] and Allison was intended as an absolute sale of the subject property for fair and adequate consideration. The relationship between [the Hatchers] and Allison was as seller and buyer only."

The Hatchers appealed the orders of the district court. In July 1996, the Court of Appeals of Iowa, after undertaking a de novo review of the complete record, affirmed the entirety of the district court's rulings in pertinent part as follows:

> [T]he Hatchers' claim [that] they did not understand the consequences of the [real estate] transaction was not supported by the record. Robert Hatcher was experienced and knowledgeable in real estate matters. We also give weight to the finding of the trial court that Hatcher's expectations were not based on actions or representations of others, but his own false hope.
> . . .
> We have carefully reviewed the record and agree with the trial court [that] Allison [and other defendants] made no false representations to the Hatchers which would support the claim for fraudulent misrepresentation. In particular, no evidence indicated any of the defendants expressed or implied the real estate transaction was a loan. The relevant documents clearly indicate the parties entered into a sales agreement and any contrary understanding by the Hatchers was not due to any false representations made by [Allison]. In fact, the Hatchers had attempted to sell their farm to another person prior to the Allison sale, with terms nearly identical to the Allison transaction. Their claim they didn't understand the transaction was a sale was not reasonable under the circumstances.

6

. . .

We agree the evidence is insufficient to support reformation. Our goal is to ascertain the intent of the parties. The evidence clearly shows the parties intended the transaction to be a sales agreement.

[F]rom the inception the Hatchers knew a sales transaction was contemplated. The Hatchers and Allison never maintained a debtor-creditor, mortgagor-mortgagee relationship. In fact, it was necessary for Allison to obtain a loan to purchase the farmland from the Hatchers.

Furthermore, the purchase price was adequate considering all the circumstances and risks, associated with the farmland, as well as the buy-back

> provision. The Hatchers did retain possession of the farm after the agreement was executed, but only during the option period. We also observe the language of the agreement leaves little doubt the transaction was a conditional sale.

On October 4, 1996, the Supreme Court of Iowa, after an en banc consideration, denied further review of the matter.

Despite the unfavorable resolution of their appeals in the Iowa state courts, the Hatchers refused to relinquish their former real estate. Allison then commenced eviction proceedings against them. However, on October 21, 1996, just two hours before a hearing was to be held on the matter, the Hatchers filed for Chapter 11 protection under the Code.

In their Schedules and Statement of Affairs, the Hatchers claimed a joint interest in the farmland and buildings which they had sold to Allison. They listed the value as being $300,000.00, "subject to a fraudulent conveyance action," and additionally claimed a homestead exemption of $150,000.00 in up to forty acres of the property. The Hatchers scheduled Allison as a fully secured creditor in the amount of $62,900.00 with the "Debtor's land" serving as collateral.[3]

The Hatchers premise the viability of their proposed plan entirely upon their claim of ownership of the real estate which they previously sold to Allison. As they stated in Article VII of their proposed plan, entitled "Means and Execution of the Plan," "The Debtor proposes to continue their [sic] farming business and development business and pay creditors from future income from this farming business and from the development of various properties of the Debtors." Thus, if their plan is to have any chance of success, the Hatchers must in some way be found the property's owners.

---

[3]In their proposed Chapter 11 plan, Allison is listed as a creditor in the amount of $69,000.00, and is treated as holding a disputed secured claim constituting an impaired class.

Both Allison and the United States Trustee filed motions to dismiss the Hatchers' case. Allison also filed a Motion for Relief from Stay. The debtors resisted these motions,

reurging the fraudulent conveyance and loan-versus-sale arguments which they had presented in the state courts. The bankruptcy court held an evidentiary hearing on these motions on December 19, 1996. On July 21, 1997, the court entered an order dismissing the Hatchers' case. In reaching this result, the court stated:

> Mr. Hatcher expressed his desire that this Court find that the transaction with Allison was a loan rather than a sale of property. This Court cannot do that. The issue of the validity of the warranty deed executed by [the Hatchers] was litigated in state court. The district court decision was appealed and affirmed by the Court of Appeals of Iowa. [The Hatchers] were denied further review by the Supreme Court of Iowa. The issue of the validity of the transactions has conclusively been determined; [the Hatchers'] transaction with Allison was not a loan. This Court finds no federal statute that provides an exception to the application of collateral estoppel and therefore affords full faith and credit to the Iowa state court judgments in this case.

The court then based its dismissal order upon its determination that the Hatchers had filed their Chapter 11 petition without the requisite good faith contemplated under Section 1112(b) of the Code. In this respect, the court provided the following analysis:

> In this case, Debtors do not own the real property that is central to their reorganization. Debtors' plan depends upon them keeping the land. Debtors were on the brink of being forcibly removed from Allison's property. Debtors state they filed their chapter 11 petition to save the house and farm and to retain possession of the property. . . . Even though ownership of the land has been conclusively decided against them, Debtors continue to occupy the land and fight efforts to evict them. The bankruptcy was filed as a litigation tactic

10

after Debtors lost their fight in the Iowa state courts.  Debtors continue to pursue their starry-eyed dream that the land is theirs and that they can develop it.  A reorganization without Allison's land would be futile;  there can be no development business without the land and Debtors cannot continue their farming operation on this land.  This Court cannot and will not rewrite the sale of Debtors' land to Allison . . . This Court finds that Debtors' bankruptcy case and plan of reorganization were filed in bad faith and are objectively futile.

Lastly, because the court determined that the Hatchers' case should be dismissed, it denied as moot Allison's motion for relief from the automatic stay.

On appeal, the Hatchers argue, inter alia, that under Iowa state law the transfer of the farmland to Allison constituted a "constructive fraud" which they may avoid pursuant to 11 U.S.C. § 544(b). Specifically, they contend that upon filing their bankruptcy petition, they assumed a new cloak of identity--that of a trustee succeeding to the rights of a judgment creditor. In this connection, they contend that they may bring a fraudulent conveyance action based upon state law by way of Code Section 544(b) and thereby avoid their prior real estate transaction, independent from and ignorant of their actions in the sale transaction and before the Iowa state courts. Additionally, the Hatchers argue that the bankruptcy court's dismissal of their Chapter 11 case on the basis of bad faith on their part was erroneous and should be reversed.

Allison argues that the Hatchers are presently asserting the same claims which they previously litigated, and which were decided, in Iowa state courts. It further contends that this attempt at relitigation is precluded under the doctrines of res judicata and collateral estoppel, as well as full faith and credit, and that the bankruptcy court's order must accordingly be affirmed.

## II.  STANDARD OF REVIEW

On appeal, the bankruptcy court's findings of fact are reviewed for clear error and its legal determinations are reviewed de novo. O'Neal v. Southwest Mo. Bank of Carthage (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir. 1997);

12

Natkin & Co. v. Myers (In re Rine & Rine Auctioneers, Inc.), 74 F.3d 848, 851 (8th Cir. 1996); Hartford Cas. Ins. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 214 B.R. 197, 199 (B.A.P. 8th Cir. 1997); see also Fed. R. Bankr. P. 8013.[4] "A finding is 'clearly erroneous' when although

---

[4]Rule 8013 of the Federal Rules of Bankruptcy Procedure reads, in pertinent part, as follows:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed. R. Bankr. P. 8013.

there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L.Ed. 746 (1948)); see United States v. Garrido, 38 F.3d 981, 984 (8th Cir. 1994); Chamberlain v. Kula (In re Kula), 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997). This Court may affirm the bankruptcy court upon any basis supported by the record. Allstate Fin. Corp. v. United States, 109 F.3d 1331, 1333 (8th Cir. 1997); Dicken v. Ashcroft, 972 F.2d 231, 233 (8th Cir. 1992); Brown v. Mitchell (In re Arkansas Communities, Inc.), 827 F.2d 1219, 1222 (8th Cir. 1987); Turner v. California Dep't of Real Estate (In re Turner), 199 B.R. 694, 696 (B.A.P. 9th Cir. 1996).

## III. DISCUSSION

### Fraudulent Conveyance Action

The Hatchers contend that, having assumed a new identity upon the filing of their bankruptcy case, they may proceed anew under Code Section 544(b) with their claim that the transfer of their property to Allison constituted a fraudulent conveyance under Iowa state law. "A fraudulent conveyance is a 'transaction by means of which the owner of real or personal property has sought to place the land or goods beyond the reach of his creditors, or which operates to the prejudice of their legal or equitable rights.'" Benson v. Richardson, 537 N.W.2d 748, 756 (Iowa 1995); see Hartford-Carlisle Sav. Bank v. Shivers, 552 N.W.2d 909, 911 (Iowa Ct. App. 1996). The Supreme Court of Iowa summarized the principles controlling a creditor's claim of fraudulent preferential transfer in First State Bank v. Kalkwarf, 495 N.W.2d 708 (Iowa 1993), as follows:

14

1. A debtor may lawfully prefer one creditor over another by way of sale, mortgage, or the giving of security to others even if the debtor's intentions toward the nonpreferred creditor are spiteful and will delay or prevent them from obtaining payment.

2. A preferred creditor's knowledge that the debtor's purpose was fraudulent will not defeat his claim, so long as he acts in good faith for his own protection.

3. Fraud on the part of the debtor will affect the rights of only those preferred creditors who in some way participate in it.

4. When a preferred creditor knows of the debtor's fraudulent intent and accepts a mortgage of security wholly or in part to aid the fraud, that preferred creditor has participated in the wrong and the mortgage is fraudulent and will not be honored.

5. Fraud must be found under the circumstances considered as a whole. Some indicia of fraud are: inadequacy of consideration; insolvency of the transferor; and pendency or threat of third-party creditor litigation.

6. A valid preexisting debt is ordinarily sufficient consideration for any conveyance or giving of security, so long as the amount of the antecedent debt is not materially less than the value of the property conveyed or encumbered.

7. A nonpreferred creditor bringing suit has the burden of showing the preferred creditor's intentional participation in the fraudulent preferential transfer by clear and convincing evidence.

Id. at 712; see, e.g., Benson, 537 N.W.2d at 756-58; Shivers, 522 N.W.2d at 911-912 ; Textron Fin. Corp. v. Kruger, 545 N.W.2d 880, 883-885 (Iowa Ct. App. 1996).

The elements of this action are identical to many which were previously analyzed by the Iowa state courts in this matter. Indeed, in their brief to this Court, arguing under the banner of "fraudulent conveyance," the Hatchers have raised precisely those claims which proved unsuccessful for them in Iowa state courts. They argue, inter alia, that their transaction with Allison was a loan and not a sale; that "[u]nrefuted testimony at the trial in the Bankruptcy Court

15

[sic] . . . established clearly that these lands were worth in excess of $268,000"; that "[t]he $63,000 paid [to the Hatchers] was not fair consideration for 46 acres of the [Hatchers'] farm lands."

In this connection, the Iowa state courts determined that the Hatchers initiated the search for a buyer of their farmland; that Mr. Hatcher was experienced and knowledgeable in real estate matters; that he negotiated the terms of the sale of their farmland; that terms of the sale were fully explained to him both in writing and orally; that the Hatchers executed the sale of their farmland freely and of their own accord; and, that no misrepresentations or false representations which would support a claim for fraudulent misrepresentation occurred in the course of the sale transaction. Significantly, the courts found the purchase price of $63,000.00 to be adequate consideration for the sale.

Thus, these prior decisions speak directly to the Hatchers' renamed action in these bankruptcy proceedings, that is, to their fraudulent conveyance claim. While the Hatchers are correct in their arguments that Code Section 544(b) provides them with a new status and identity in bankruptcy—that of a trustee with super-avoidance powers, their reliance on that section is misplaced when they argue, in essence, that it also provides them with an opportunity to collaterally attack and disregard prior state court decisions. Section 544(b) does not provide the Hatchers with an opportunity to relitigate in a federal forum those claims which have previously been resolved in state courts. We may not, as a lower federal appellate court, review the orders of those courts. Only the United States Supreme Court may review state court decisions.

**Rooker-Feldman Doctrine**

We note that preclusion, as relied upon by the bankruptcy court, and the Rooker -Feldman doctrine "are closely related legal concepts." Goetzman v. Agribank, FCB (In re Goetzman), 91 F.3d 1173, 1177 (8th Cir.), cert. denied, --- U.S. ----, 117 S. Ct. 612, 136 L.Ed.2d 537 (1996); see Charchenko v. City of Stillwater, 47 F.3d 981, 983 n. 1 (8th Cir. 1995). The Rooker-Feldman doctrine "derives from the prohibition on federal appellate review of state court proceedings," Bechtold v. City of Rosemount,104 F.3d 1062, 1065 (8th Cir. 1997), and

17

provides that "lower federal courts do not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings," Neal v. Wilson, 112 F.3d 351, 356 (8th Cir. 1997). The doctrine "commands that the United States Supreme Court is

the only federal court which may review state court decisions." First Commercial Trust Co. v. Colt's Mfg. Co., Inc., 77 F.3d 1081, 1083 (8th Cir. 1996); Neal, 112 at 356.

"Although the state and federal claims may not be identical, impermissible appellate review may occur when a federal court is asked to entertain a claim that is 'inextricably intertwined' with the state court judgment." In re Goetzman, 91 F.3d at 1177; see Neal, 112 at 356. "In order to determine whether a claim is 'inextricably intertwined' with a state court claim, the federal court must analyze whether the relief requested in the federal action would effectively reverse the state court decision or void its ruling." Bechtold,104 F.3d at 1065; Keene Corp. v. Cass, 908 F.2d 293, 296-97 (8th Cir. 1990); see also Neal, 112 at 356 ("A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.").

Examination of the Hatchers' claims on appeal leads us to conclude that they are inextricably intertwined with the claims the Hatchers presented in the prior state court proceedings previously discussed herein. Central to the state court proceedings were determinations by both the state district court and the Court of Appeals of Iowa that the real estate transaction to which the Hatchers object as being a fraudulent conveyance, and which they claimed and continue to claim was a loan, was actually a sale. In the state court proceedings, it was adjudged that the Hatchers voluntarily sold this property to Allison for fair consideration and under no misrepresentations, and that Allison is its present owner. Nevertheless, in the instant matter, the Hatchers continue to challenge these state court determinations and additionally premise the viability of their Chapter 11 plan upon their purported ownership of this farmland, the ownership of which the state courts have determined lies in Allison.

Thus, if the Hatchers are to succeed in these bankruptcy proceedings, this Court must effectively reverse the determinations of the Iowa state courts. Accordingly, the

result the Hatchers currently seek is precisely that which the Rooker-Feldman doctrine is intended to prevent. "'Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.'" Bechtold,104 F.3d at 1066 (quoting

Penzoil Co. v. Texaco, Inc., 481 U.S. 1, 25, 107 S. Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)).   We conclude that the Hatchers' instant appeal is, in substance, a prohibited appeal under the Rooker-Feldman doctrine.

## Dismissal for Cause

The bankruptcy court has broad discretion in deciding whether to dismiss or convert a Chapter 11 case, Lumber Exch. Bldg. Ltd. Partnership v. Mutual Life Ins. Co. (In re Lumber Exch. Bldg. Ltd. Partnership), 968 F.2d 647, 648 (8th Cir. 1992), and is free to dismiss such a case where the debtor cannot propose a confirmable plan, Windsor on the River Assocs., Ltd. v. Balcor Real Estate Fin., Inc. (In re Windsor on the River Assocs., Ltd.), 7 F.3d 127, 133 (8th Cir. 1993). Dismissal is appropriate if "cause" exists, and "if it is 'in the best interest of creditors and the estate.'"  Windsor, 7 F.3d at 133 (quoting 11 U.S.C. § 1112(b));  In re Schriock Const., Inc., 167 B.R. 569, 574 (Bankr. D. N.D. 1994).

The statutory definition of "cause" includes, "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;  inability to effectuate a plan;  [and] unreasonable delay by the debtor that is prejudicial to creditors[.]"   11 U.S.C. § 1112(b)(1-3).  "[T]he statutory list is not exhaustive and . . . a court may consider other factors and equitable considerations in order to reach an appropriate result in the individual case." Schriock, 167 B.R. at 575;  see In re Federal Roofing Co., 205 B.R. 638, 641 (Bankr. N.D. Ala. 1996).

Such other factors as warrant dismissal under Section 1112(b) may include filings made in bad faith. See Trident Assocs. Ltd. Partnership v. Metropolitan Life Ins. Co. (In re Trident Assocs. Ltd. Partnership), 52 F.3d 127, 130 (6th Cir.), cert. denied, --- U.S. ----, 116 S. Ct. 188, 133 L.Ed.2d 125 (1995);   First Nat'l Bank of Sioux City v. Kerr (In re Kerr), 908 F.2d 400, 404 (8th Cir. 1990);  St. Paul Shelf Storage Ltd. Partnership v. Port Auth. of St. Paul (In re St. Paul Self Storage Ltd. Partnership), 185 B.R. 580, 582 (B.A.P. 9th Cir. 1995);   In re Wentworth, 83 B.R. 705, 707 (Bankr. D. N.D.

1988).  The following factors are among those which have been recognized as evidence of a bad faith filing:

(1)     the debtor has only one asset, the property, in which it does not hold legal title; (2) the case is essentially a two-party dispute capable of prompt adjudication in      state court;

(3)     there are only a few unsecured creditors;

(4) the debtor's property has been posted for foreclosure, and the debtor has been      unsuccessful in defending against the foreclosure in state court;

(5) the filing of the petition effectively allows the debtor to evade court orders;

(6) the debtor has no ongoing business to reorganize;

(7)     the debtor has few employees;

(8) the timing of the debtor's filing evidences an intent to delay or frustrate the      legitimate efforts of the debtor's secured creditor to enforce their rights.

See In re Trident Assocs. Ltd. Partnership, 52 F.3d at 131; Y.J. Sons & Co., Inc. v. Anemone, Inc. (In re Y.J. Sons & Co.), 212 B.R. 793, 802 (D. N.J. 1997); In re St. Paul Self Storage Ltd. Partnership, 185 B.R. at 582-83; In re Wentworth, 83 B.R. at 707.

In concluding that the Hatchers' case should be dismissed for cause pursuant to 11 U.S.C. § 1112(b), the bankruptcy court made the following determinations:

> In this case, [the Hatchers] do not own the property that is central to their reorganization. [Their] plan depends upon them keeping the land. [They] were on the brink of being forcibly removed from Allison's property. [They] state they filed their chapter 11 petition to save the house and farm and to retain possession of the property. [The Hatchers], operating as the debtor-in-possession, employ no non-insider employees. While the report of operations through November 30, 1996, shows a net income, a significant portion of the income was from the sale of assets (sixteen percent of the hay and straw, and ten percent of the cattle scheduled). [They] scheduled nine unsecured creditors with relatively small claims, with the exception of the debt owed [their] former counsel. Even though ownership of the land has been conclusively decided

23

against them, [the Hatchers] continue to occupy the land and fight efforts to evict them. The bankruptcy was filed as a litigation tactic after [they] lost their fight in the Iowa state courts. [They] continue to pursue their starry-eyed dream that the land is theirs and that they can develop it. A reorganization without Allison's land would be futile; there can be no

> development business without the land and [the Hatchers] cannot continue their farming operation on this land. This Court cannot and will not rewrite the sale of [their] land to Allison, in essence mandating Allison's assets be placed in involuntary servitude for the exclusive use of [the Hatchers]. This Court finds that [the Hatchers] case and plan of reorganization were filed in bad faith and are objectively futile.

The record and the case law discussed above fully support the court's conclusion. The Hatchers' appeal amounts to a renewed effort to adjudicate matters which have already been laid to rest in state courts; the question of ownership of the property they sold to Allison cannot be resurrected here. Thus, it was not error for the bankruptcy court to dismiss the Hatchers' Chapter 11 case for cause by finding that their petition was filed in bad faith.

## IV. CONCLUSION

The bankruptcy court did not err in affording full faith and credit to the state court determinations in this matter. It would be improper for this Court to revisit for the purpose of reconsideration the judgments of the Iowa courts. Furthermore, the bankruptcy court did not err, under its broad discretion, in dismissing the Hatchers' case for cause pursuant to 11 U.S.C. § 1112(b). Accordingly, the order of the bankruptcy court dismissing this case for cause, and denying as moot Allison Financial's Motion for Relief from Stay, is AFFIRMED.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL, EIGHTH CIRCUIT.